MORRISON'S SOUTHERN PLAZA CORP., ETC. *v.* SOUTHERN PLAZA, INC.

[No. 867A49. Filed December 30, 1968. Rehearing denied January 21, 1969. Transfer granted April 8, 1969.]

*Marvin Mitchell, Eskenazi, Mitchell & Yosha, Leslie Duvall, Sparrenberger, Duvall, Tabbert & Lalley,* all of Indianapolis, for appellants.

*Johnson & Weaver,* Indianapolis, for appellee.

CARSON, C. J.—This was an action brought by Southern Plaza, Incorporated, the appellee, as plaintiff below, against Morrison's Southern Plaza Corporation and Morrison's Washington Street Corporation, appellants, as defendants below. The action was for back rent and common area costs under a lease between appellee and its tenant, the appellant, Morrison's Southern Plaza Corporation and the guarantee by Morrison's Washington Street Corporation.

The appellants defended and counterclaimed on the theory that the appellee had breached its obligations under the lease by violating a provision in the lease which appellants alleged restricted the appellee's right to lease space in the shopping center to other women's ready-to-wear stores. The issues were joined on the appellee's complaint as amended, with the lease and the guarantee attached as exhibits and the appellants' amended answer under Rule 1-3 of the Rules of the Supreme Court of Indiana and appellants' counterclaim to which appellee filed answer pursuant to Rule 1-3 of the Rules of the Supreme Court of Indiana. The appellee subsequently filed what it entitled a "supplemental complaint", and the appellants filed a supplemental counterclaim.

Upon the issues thus joined, trial was had before the court without a jury.

The court made special findings of fact and stated its conclusions of law thereon.

The findings of facts and conclusions of law read as follows:

"1. On October 7, 1960, plaintiff and the defendant Morrison's Southern Plaza Corporation executed a certain lease, a copy of which is attached to plaintiff's complaint, marked Exhibit "A", and made a part of these findings by reference.

"2. To induce the plaintiff to enter into said Lease, and as a part of the consideration therefor, the defendant Morrison's Southern Plaza Corporation on October 5, 1959, executed a written guaranty, a copy of which is attached to plaintiff's complaint, marked Exhibit "B", and made a part of these findings by reference.

"3. The defendant Morrison's Southern Plaza Corporation took possession of the demised premises described in said Lease on or about April 8, 1961, and has been in possession continuously since that date.

"4. The above Lease provides that the defendant Morrison's Southern Plaza Corporation is to pay a minimum rental of $15,000.00 per year, payable in equal monthly installments of $1,250.00 on the first day of each month.

"5. The defendant Morrison's Southern Plaza Corporation paid said minimum rental until the payment due on the 1st day of May, 1964. The payment due on the 1st day of April 1964, was not paid until October of 1964. Said defendant has not made any payments on said minimum rental since the payment due April 1, 1964.

"6. The minimum or base rent under said Lease from May 1, 1964 through April 1, 1966, calculated at the rate of $1,250.00 per month is $30,000.00.

"7. In said Lease the defendant Morrison's Southern Plaza Corporation agreed to pay upon demand, in addition to the rental, its share of certain common area costs described in Article III, Section 2, of said Lease. The said defendant paid such common area costs for the Lease period through November, 1963. The said defendants' share of common area costs for the period commencing in December, 1963 totals $3,148.75.

"8. Demand has been made on the defendants for the above described common area costs from December, 1963 through March, 1966. None of the above common area costs have been paid.

"9. In Article II, Section 2, of said Lease, Morrison's Southern Plaza Corporation agreed to pay the plaintiff, for each year of the demised term, an additional rental equal to the amount by which the percentage rentals for the year in question, calculated at five (5%) per cent on the first Three Hundred Thousand ($300,000.00) Dollars of gross sales, four (4%) per cent on the next One Hundred Thousand ($100,000.00) Dollars of gross sales and Three and one-half (3 1/2%) per cent on all gross sales exceeding Four Hundred Thousand ($400,000.00) Dollars made on the demised premises, exceed the minimum rental provided in said Lease.

"10. For the sales period from February 1, 1964, to January 31, 1965, the defendant Morrison's Southern Plaza Corporation made total sales of Three Hundred and Forty Thousand Five Hundred and Seventy-one Dollars and Twenty-six ($340.571.26) Cents which, after deductions of Three Hundred Thousand ($300,000.00) Dollars for minimum sales for the period, and Three Thousand Two Hundred and Seven Dollars and Twenty-eight ($3,207.28) Cents for sales to employees, left sales subject to additional rent at the rate of four (4%) percent in the amount of Thirty-seven Thousand Three Hundred and Sixty-three Dollars and Ninety-eight ($37,363.98) Cents. By virtue of such

sales the defendants became indebted to the plaintiff in the amount of One Thousand Four Hundred and Ninety-four Dollars and Fifty-six ($1,494.56) Cents on February 1, 1965.

"11. For the sales period from February 1, 1965 to January 31, 1966, the defendant Morrison's Southern Plaza Corporation made total sales of Three Hundred and Eighty-three Thousand Eight Hundred and Fifty-nine Dollars and Sixty-two ($383,859.62) Cents which, after deductions of Three Hundred Thousand ($300,000.00) Dollars for minimum sales for the period, and Three Thousand Two Hundred and Sixty-six Dollars and Thirteen ($3,266.13) Cents for sales to employees, left sales subject to additional rent at the rate of four (4%) per cent in the amount of Eighty Thousand Five Hundred and Ninety-three Dollars and Forty-nine ($80,593.49) Cents. By virtue of such sales the defendants became indebted to the plaintiff in the amount of Three Thousand Two Hundred and Twenty-three Dollars and Seventy-four ($3,223.74) Cents on February 1, 1966.

"12. Interest on the minimum rent from the date when due until the date of trial, plus interest on the April 1, 1964, payment from the date due until October, 1964, totals $1,762.52.

"13. Interest on said common area costs from the date due until the date of trial totals $178.14.

"14. Interest on the percentage rent due February 1, 1965, computed commencing 60 days after the due date, to the date of trial totals $89.67.

"15. In Article XXX of the Lease the Lessor agreed not to lease to or permit use of leased space for a women's ready-to-wear store. ('Women's ready-to-wear store' shall mean a store carrying solely, or in combination, women's misses, juniors or teen's coats, suits, dresses, skirts, sportswear, millinery, sweaters, and beachwear), excepting a store of no more than 6,000 square feet of the Gaytime Shop, Inc., or a substitute therefor.

"16. That on December 31, 1963, the plaintiff and Paul Harris Inc. entered into a lease whereby the plaintiff leased a storeroom in the Southern Plaza Shopping Center to Paul Harris Inc. for a minimum term of 10 years beginning October 11, 1964.

"17. That continuously ever since October 11, 1964, the plaintiff has permitted Paul Harris, Inc. to use leased space

from and belonging to the plaintiff within the Southern Plaza Shopping Center for the operation of its business.

"18. That Paul Harris, Inc. sells in competition with Morrison's Southern Plaza Corporation the following types of merchandise; underwear, robes, handbags, dresses, sportswear, jackets, sweaters, slacks and beach wear.

"19. That Paul Harris, Inc. is a women's ready-to-wear store within the term and meaning of the lease.

"20. That Morrison's Southern Plaza Corporation duly notified the plaintiff that it considered the lease of space by Paul Harris, Inc. in the Southern Plaza Shopping Center a breach of the lease between the plaintiff and Morrison's Southern Plaza Corporation, but the plaintiff failed and refused to correct the breach.

"21. That Paul Harris, Inc. is not a substitute for Gaytime Shops, Inc. within the terms and meaning of the Lease.

"22. The defendants have not proved any damage as a result of the Lease from the plaintiff to Paul Harris, Inc. or the occupation of space in the Southern Plaza Shopping Center by Paul Harris, Inc.

"23. The defendants have not shown that any benefit would be conferred upon them by an injunction enjoining the plaintiff from permitting Paul Harris, Inc. or any like organization to lease, use or occupy the premises mentioned in the counter-claim or any other part of the Shopping Center.

"24. The plaintiff and Paul Harris, Inc. have entered into a Lease which extends for a period of ten (10) years from October 11, 1964, and has to successive five (5) year options for renewal. It is beyond the power of the plaintiff to prohibit Paul Harris, Inc. from occupying the Shopping Center during said ten (10) year period, or any renewals thereof.

"25. That the plaintiff has breached the Lease existing between Southern Plaza, Inc. and Morrison's Southern Plaza Corporation.

"26. That the defendant Morrison's Southern Plaza Corporation has elected to remain in possession of the premises which are the subject of such Lease.

"27. That by reason of the defendant Morrison's Southern Plaza Corporation retaining possession of the premises it has obligated itself for the reasonable rental value of

such premises and the Court further finds that a reasonable rental for such premises is as set out in said Lease.

"28. That by reason of the fact of the breach of said Lease by the plaintiff, the Court finds that no attorneys' fees are allowable as against the said defendant for the bringing of this action by the plaintiff.

"29. That by reason of the finding that no recovery of damages is made on the basis of the counterclaim of the defendant Morrison's Southern Plaza Corporation, no attorneys' fees are allowable on behalf of the counterclaimant as against the plaintiff."

"1. That the law on the question of the breach of the lease is with the defendant.

"2. That the law on the cross-complaint is with the plaintiff on the question of damages.

"3. That the plaintiff is entitled to recover the reasonable rental value of the premises occupied by the defendant and that the total accrued rent to the date of April 13, 1966 is in the amount of $37,867.05.

"4. That further, the plaintiff is entitled to recover the sum of $2,030.31 interest on the total accrued rent to the date of trial plus interest in the amount of 6% per annum from April 13, 1966 until paid.

"5. That neither party is entitled to an allowance for attorneys' fees."

The appellant then filed its motion for a new trial which reads as follows:

"1. That the decision of the Court is contrary to law.

"2. Error in the failure to assess a recovery for the defendant, Morrison's Southern Plaza Corporation, against the plaintiff.

"3. The assessment of the amount of recovery by the plaintiff against the defendants is erroneous, it being too large.

"4. The Court erred in failing to grant an injunction enjoining the plaintiff from permitting Paul Harris, Inc. or any like organization to lease, use or occupy any part of the Southern Plaza Shopping Center.

"5. That the decision of the Court is not sustained by sufficient evidence."

Pursuant to Rule 1-14b of the Rules of the Supreme Court of Indiana, the appellants filed their memorandum in support of motion for a new trial.

The court overruled the motion for a new trial and this ruling of the court is the sole assignment of error.

From an examination of the pleadings filed in this action, we conclude that the theory of the plaintiff's complaint was based upon the alleged breach of the covenant in the lease to pay rent. The evidence produced by the plaintiff, supports this theory. The court's special findings of facts, conclusions of law and judgment, are based upon an entirely different theory; namely, that by reason of the fact that defendant, Morrison's Southern Plaza, retained possession of the premises, it thereby obligated itself for the payment of the reasonable rental value of the premises and further that the reasonable rental value for the premises is the amount set out in the lease.

It therefore appears that the court's findings, conclusions and judgment did not conform to the theory of the plaintiff-appellee's cause of action and that such findings, conclusions and judgment were outside of those issues and not based upon the evidence adduced at the trial.

It is well-settled, in Indiana, that the plaintiff, in order to recover, must recover on the theory supported by the allegations of his complaint; that the plaintiff cannot allege one cause of his action and recover on proof of another unless there was an amendment to the complaint based upon the evidence and a clear showing that the amendment was not harmful to the defendant's defense.

In the case of *Heck, et al. v. Selig* (1963), 134 Ind. App. 336, 188 N. E. 2d 118, this court said at page 342:

"The rule is well established in this state that parties must recover upon the allegations of the pleadings. They must recover *secundum allegata et probata,* or not at all. This is the only reasonable rule under our practice. It would be folly to require the plaintiff to state his cause of action in his complaint and the defendant disclose his defense in the answer, if, on the trial, either or both might abandon such allegations and recover upon other facts which are substantially different from those alleged. A variance is a departure from the allegations of the pleadings in some particular or particulars and an attempt to prove different facts from those alleged."

Further, in *Heck v. Selig, supra,* in quoting from the case of *Fleser v. Aranjo* (1954), 125 Ind. App. 160, 165, 123 N. E. 2d 248, this court said:

". . . The first time that these issues were raised was in the rendering of the final judgment by the court. We believe that such a judgment is without the issues presented to the trial court. A judgment to be valid and binding must be made upon the issues as they are presented, and, if not, the same is erroneous. *The Wayne Pike Company v. Hammons et al.* (1891), 129 Ind. 368, 27 N. E. 487."

The court held that where the judgment was not within the issues, the decision was contrary to law.

This rule has a long legal history in the State of Indiana and is based upon decisions by our Supreme Court and this court in the cases of *Miller, Etc. v. Ortman, Etc., et al.* (1956), 235 Ind. 641, 136 N. E. 2d 17; and, *Moore v. Moore* (1922), 81 Ind. App. 169, 133 N. E. 164.

We therefore conclude that the findings of facts, the conclusions of law, stated thereon, and the judgment of the court in this case, were contrary to law and that the same should be reversed and the appellant's motion for a new trial sustained.

Judgment reversed and the trial court is directed to sustain the motion for a new trial.

Cooper and Prime, J.J., concur.

Faulconer, J., dissents.

NOTE.—Reported in 242 N. E. 2d 636.