Morrison's Southern Plaza Corp., et al. *v.*
Southern Plaza, Inc.

[No. 469S71. Filed April 8, 1969. Rehearing denied May 20, 1969.]

110

*Eskenazi, Mitchell & Yosha,* Indianapolis, and *Sparrenberger, Duvall, Tabbert & Lalley,* Indianapolis, for appellants.

*Ben J. Weaver, Charles G. Reeder, Johnson, Weaver & Martz,* Indianapolis, for appellee.

HUNTER, J.—Petitioner, the owner of a shopping center, sued the respondent, the lessee, for back rent and common area costs under a written lease. In the third rhetorical paragraph of the complaint, the petitioner alleged:

"Pursuant to said lease the defendant Morrison's Southern Plaza Corporation took possession of said premises and has since and does still occupy the same under said lease."

Respondent answered, specifically denying this allegation, and further asserting that the landlord had breached a provision in the lease which prohibited it from renting space to the lessee's competitors. Respondent also counterclaimed for damages alleged to have been sustained as a result of the landlord's breach. The petitioner replied denying that it had breached the restrictive provision in the lease.

The lease, which was introduced into evidence, contained the following restriction:

"The lessor agrees not to lease to, or permit use of leased space for, a woman's ready-to-wear store . . . excepting a store of no more than 6,000 square feet of the Gaytime Shop, Inc., or a *substitute* therefor" (our emphasis).

The parties stipulated that the lessor had entered into a lease with Paul Harris, Inc., whose business volume was approximately two-thirds women's and children's wearing apparel. The petitioners contended that Paul Harris, Inc., had been a *substitute* for Gaytime, Inc., and the respondent contended that the lease with Paul Harris, Inc., constituted a material breach of the restrictive covenant.

The trial court made special findings of facts and conclusions of law including:

"21. That Paul Harris, Inc. is not a substitute for Gaytime Shops, Inc. within the terms and meaning of the Lease."

"25. That the plaintiff has breached the Lease existing between Southern Plaza, Inc. and Morrison's Southern Plaza Corporation."

"28. That by reason of the fact of the breach of said Lease by the Plaintiff, the Court finds that no attorneys' fees are allowable as against the said defendants for the bringing of this action by the plaintiff."

From the above facts, the court reached the following conclusion of law:

" 1. That the law on the question of the breach of the lease is with the defendant."

Thus, the court found that the petitioner had violated the restrictive covenant by entering into a lease with Paul Harris, Inc. The court further found, however, that no material damages had been shown to have resulted from this breach:

"22. The defendants have not proved any damage as a result of the Lease from the Plaintiff to Paul Harris, Inc. or the occupation of space in the Southern Plaza Shopping Center by Paul Harris, Inc."

"29. That by reason of the finding that no recovery of damages is made on the basis of the counterclaim of the defendant Morrison's Southern Plaza Corpora-

tion, no attorneys' fees are allowable on behalf of the counterclaimant as against the plaintiff."

On the basis of these facts, the court concluded:

" 2. That the law on the cross-complaint is with the plaintiff on the question of damages."

The court found that the respondent had remained in possession of the premises and had become obligated for the reasonable rental value which the court further found to be the amount provided in the lease:

"26. That the defendant Morrison's Southern Plaza Corporation has elected to remain in possession of the premises which are the subject of such Lease."

"27. That by reason of the defendant Morrison's Southern Plaza Corporation retaining possession of the premises it has obligated itself for the reasonable rental value of such premises and the Court further finds that a reasonable rental for such premises is as set out in said Lease."

On the basis of these findings of facts, the court drew the following conclusions of law:

" 3. That the plaintiff is entitled to recover the reasonable rental value of the premises occupied by the defendant and that the total accrued rent to the date of April 13, 1966 is in the amount of $37,867.05."

" 4. That further, the plaintiff is entitled to recover the sum of $2,030.31 interest on the total accrued rent to the date of trial plus interest in the amount of 6% per annum from April 13, 1966 until paid."

The trial court apparently denied a recovery based on the written lease, but allowed the petitioner a restitutionery remedy for a benefit conferred.

Respondent filed a motion for a new trial on the following grounds:

" 1.  That the decision of the court is contrary to law.

2.  Error in the failure to assess a recovery for the defendant, Morrison's Southern Plaza Corporation, against the plaintiff.

3.  The assessment of the amount of recovery by the plaintiff against the defendant is erroneous, it being too large.

4.  The Court erred in failing to grant an injunction enjoining the plaintiff from permitting Paul Harris, Inc. or any like organization to lease, use or occupy any part of the Sourthern Plaza Shopping Center.

5.  That the decision of the Court is not sustained by sufficient evidence."

The court overruled the motion for a new trial, and this ruling was assigned as error by the respondent. The Appellate Court reversed the judgment and gave two reasons for so doing:

1.  The findings, conclusions and judgment of the trial court were "not based upon the evidence adduced at the trial."

2.  ". . . the plaintiff cannot allege one cause of action and recover on proof of another unless there was an amendment to the complaint based upon the evidence and a clear showing that the amendment was not harmful to the defendant's defense." *Morrison's Southern Plaza Corp. v. Southern Plaza, Inc.*, (1968), 242 N. E. 2d 636, 640.

A fair adjudication of this case requires a careful analysis of both of these statements.

Section 357 of The Restatement of Contracts sets forth the general rule as regards allowing restitution in favor of a party who is himself in default on a contract:

"(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but *the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant,* the plaintiff

can get judgment, except as stated in Subsection (2), for the amount of such benefit *in excess of the harm that he has caused to the defendant by his own breach,* in no case exceeding a ratable proportion of the agreed compensation, *if*

(a) The plaintiff's breach or non-performance is not wilful and deliberate; or

(b). *the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred, or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it,* or retains property received although its return in specie is still not unreasonably difficult or injurious.

(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance *unless the facts are those stated in Subsection (1 b), in which case it is the price fixed by the contract for such part performance, or,* if no price is so fixed, a ratable proportion of the total contract price" (our emphasis).

As applied to the facts in the case at bar, a restitution will lie for the petitioner if:

(1) The petitioner has rendered a part performance under the contract that is a net benefit to the respondent,

(2) The respondent, with knowledge of the breach, has accepted the benefit of the petitioner's part performance.

(3) The compensation sought is not merely a payment of earnest money, and,

(4) The contract does not provide that the respondent could retain the rent in the event of a breach by petitioner.

Respondent's staying in possession of the petitioner's premises is certainly enough of a benefit to satisfy the first two elements required for a restitutionery remedy. As regards the third element, the compensation sought by the petitioner is *not* merely earnest money. Finally, the contract does *not* provide that all rental payments may be withheld in the event of a breach of the restrictive covenant, but instead *expressly* provides the respondent should have three other alternative remedies:

> "A breach of the within restrictions shall be the basis of *cancellation* of the lease on the part of the Lessee as well as *money damages* or *injunctive relief* or any combination thereof..." (our emphasis).

The recovery, according to the Restatement, should be based upon "the price fixed by the contract for (the) part performance" which is "in excess of the harm caused to the (respondent) caused by his own breach." The trial court found that no harm had been caused to the respondent by the petitioner's breach of the restrictive covenant. Thus, it would seem that the facts found by the trial court in the case at bar, if they were sustained by sufficient evidence, would allow the petitioner in default, a restitutionery remedy.

Stipulation 7 reads as follows:

> "Morrison's Southern Plaza, Inc. took possession of the demised premises on or about April 8, 1961, and has been in possession continuously since that date."

The parties stipulated that the respondent had remained in possession of the premises, and this fact is not contested by the respondent on appeal.

The only additional facts which are essential to a restitutionery remedy and which the respondent contends are not supported by sufficient evidence are:

(1) that the respondent sustained no damages as a result of petitioner's breach, and

(2) that the reasonable rental value of the premises was the amount provided in the written lease.

It was the respondent who, in his answer and counterclaim, alleged that damages had been sustained as a result of petitioner's breach of the restrictive covenant, and it was his burden to prove these damages. It was stipulated that the competitor had gone into possession of its premise in October, 1964. The respondent introduced into evidence the profit and loss statements for its Southern Plaza store for the fiscal years ending August 31, 1963, 1964 and 1965. The profit and loss statements showed that gross sales had continuously increased during the three fiscal years: in 1963, they totalled $289,184.11; in 1964, $295,609.96; and in 1965, $376,460.21. Gross profit on sales had also increased in all three years. Net profits, which were only $163.03 for the fiscal year ending August 31, 1964, had junped to $18,726.33 by the end of the following fiscal year. Albert Goldman, an officer of respondent testified in direct examination as follows regarding these exhibits:

"Q. In 1963, Mr. Goldman, did your store show a profit in Southern Plaza?

A. Yes, it did.

Q. Approximately how much?

A. In 1963 approximately $326.00.

Q. In 1964?

A. $163.00.

Q. As a percentage of your gross sales, what was your profit?

A. Less than one tenth of one per cent, in 1963 a little over and in 1964 under.

Q. In 1965 what was your profit?

A. Approximately $28,726.00. (sic)

Q. Where do the fiscal years correlate or uncorrelate to the entry of Paul Harris in the shopping center?

A. The last fiscal year represented approximately ten and a half months during which Paul Harris was in competition with us.

Q. Which year?

A. The last, the fiscal year 1965.

Q. What about the fiscal year 1964?

A. In 1964 Paul Harris was not in operation in Southern Plaza.

Q. State for the record what the fiscal year is?

A. From September 1, through August 31.

Q. As to your gross sales in the fiscal year 1964, and the fiscal year 1965, what were they?

A. In 1964, approximately $295,000 and in 1965 they were $376,000.

Q. There was an increase in sales since Paul Harris came into the center; are you aware of any facts that might suggest the reason for this increase?

A. Yes, during that fiscal year Route 465 opened up and that opened up an entirely new trading area to Southern Plaza.

Q. Any other reasons?

A. General economic conditions in the retail business and especially in the women's apparel were extremely good in this period as indicated by not only our performance but others."

Respondent introduced another exhibit into evidence which was identified by Mr. Goldman as a "comparison of sales" for the fiscal years ending in 1964 and 1965. The exhibit categorized the respondent's sales into those which were competitive and those which were non-competitive with Paul Harris, Inc. This exhibit showed an increase in sales of 45.3% in the non-competitive articles, and an increase of only 16.6% in the competitive merchandise. In explaining the exhibit, Mr. Goldman testified as follows:

"Q. Did you have an increase in the lines of goods where Paul Harris competes with you?

A. Yes, we did.

Q. What was the amount of that increase?

A. 16.6 per cent."

The respondent attempted to prove that its sales in the competitive articles might have been higher but for the breach, by showing the increase in sales in the non-competitive lines. The increase in the competitive merchandise was alleged to have been a result of a new interstate highway and other economic factors not related to the lease with the competitor. But the trial court was justified in finding that, in fact, gross sales and profits had actually increased by a substantial amount. An exhibit was introduced showing the gross sales of twenty-eight other tenants at Southern Plaza; it is significant that only a few of respondent's neighbors realized the increase in gross sales that the respondent experienced.

Based on sales reports which the respondent had filed with the petitioner, and which the petitioner introduced into evidence, the trial court also found as follows:

"10. For the sales period from February 1, 1964, to January 31, 1965, the defendant Morrison's Southern Plaza Corporation made total sales of Three Hundred and Forty Thousand Five Hundred and Seventy-one Dollars and Twenty-six ($340,571.26) . . ."

"11. For the sales period from February 1, 1965 to January 31, 1966, the defendant Morrison's Southern Plaza Corporation made total sales of Three Hundred and Eighty-three Thousand Eight Hundred and Fifty-nine Dollars and Sixty-two ($383,859.62) Cents. . ."

This again shows an increase in gross sales for the respondent after the breach of the restrictive covenant.

In view of the foregoing, it must be said that there is sufficient evidence to support the trial court's finding that no damages resulted to the respondent as a result of the petitioner's breach.

It must be presumed that the parties acted reasonably when they negotiated the lease and that the lessee would not have

agreed to pay an excessive rent for the possession of the premises. It could not be contended that the premises had become any less valuable to the lessee when, in fact, it had experienced an increase in gross sales, gross profits and net profits. This, when combined with the measure of damages recommended in the Restatement of Contracts, is probably sufficient to support the finding of the trial court that the reasonable rental value of the premises was the amount provided in the written lease. The Restatement suggests that the measure of damages should be the "price fixed by the contract." Restatement § 357.

In addition to this, the lease with Paul Harris, Inc., the competitor, was introduced into evidence. In comparing the minimum rent due on both of these leases, we note that respondent is obligated to pay $1.89 per square foot per year while its competition pays $1.75 per square foot per year. Further, while respondent must pay an additional rent of 4% of its gross sales over $300,000, and 3 1/2% over $400,000, its competitor pays additional rent of 3% of its gross sales over $335,416.67. It cannot be said that these two leases are substantially disproportionate as regards the rent which each lessee must pay. The trial court could use no better yardstick to determine the reasonableness of the rental value specified in the written lease than the rental value specified in the lease of a competitor in the same shopping center.

We, therefore, hold that there was ampled evidence to support the trial court's findings that the reasonable rental value of the premises was the amount provided in the written lease.

Having reviewed all the elements required to permit the petitioner a restitutionery remedy, we conclude that there is sufficient evidence in the record to sustain the trial court's findings of facts, conclusions of law and judgment. We now turn to the Appellate Court's second reason for reversing the judgment of the trial court, that "the plaintiff cannot allege one cause of action and recover on proof of another . . ."

This rule could only find support in the common law theory of *issue* pleading. As early as 1852, Indiana enacted the New York Field Code. One of the primary purposes of this new code was to replace *issue* pleading with *fact* pleading. To accomplish this purpose, the code provided that the complaint need only contain "a statement of the facts constituting the cause of action in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." Ind. Ann. Stat. § 2-1004 (1967 Repl.) It is true that, even under the Field Code, Indiana has required a plaintiff to plead a definite cause of action, and, if more than one theory is to be alleged, the complaint must still be drafted in separate paragraphs. *Sickles v. Aetna Securities Co.* (1942), 220 Ind. 347, 41 N. E. 2d 947. We take judicial notice that the 1969 General Assembly has enacted a new Code of Civil Procedure which is to take effect on January 1, 1970, (House Enrolled Act No. 1733). This new code, as regards the pleadings in a civil action, closely parallels the *"notice* pleading" enunciated in the Federal Rules of Civil Procedure and currently used by the federal district courts.* It must be presumed that the trend and expressed legislative intent is one of simplifying the procedure of pleading.

Against this background, it is the opinion of this court that Ind. Ann. Stat. § 2-3231, enacted in 1881, sets forth a procedure which is contrary to the rule enunciated by the Appellate Court. This statute provides:

*"No judgment shall be stayed or reversed,* in whole or in part, by the Supreme Court, *for any defect in form, vari-*

---

*Rule 15(b) of the new code provides as follows:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues."

*ance or imperfections contained in the record, pleadings,* process, entries, returns or other proceedings therein, *which by law might be amended by the court below, but such defects shall be deemed to be amended in the Supreme Court"* (our emphasis).

A trial court cannot be reversed on appeal for any defect in form or variance "that could have been amended by that court. Therefore, the issue becomes whether or not the lower court might have amended the complaint to conform to the evidence." *General Outdoor Advertising Co. v. LaSalle Realty Corp.* (1966), 141 Ind. App. 247, 218 N. E. 2d 141.

Ind. Ann. Stat. 2-1068 (1968 Repl.), also enacted in 1881, gives the trial court broad powers as regards amending the pleadings:

"After trial and before final judgment, the court may, in its discretion and upon such terms as may be deemed proper for the furtherance of justice, order that any pleading be amended by correcting any mistake in name, description, legal effect, or in any other respect; or by inserting, striking out, or modifying any material allegation, in order that the pleadings may conform to the facts proved, *where the amendment will not deprive a party of any substantial right"* (our emphasis).

Thus, unless the respondent has been deprived of a substantial right, the form or theory of the petitioner's complaint should not be so binding as to preclude the trial court from allowing a recovery based on a different theory when fairly supported by evidence adduced at the trial. See *Ralph J. Rimer, Inc. v. Stanz* (1952), 122 Ind. App. 178, 101 N. E. 2d 428; *Farmers Mutual Aid Assn. v. Yager* (1938), 104 Ind. App. 554, 12 N. E. 2d 382.

In the case at bar, the evidence required to establish a cause of action in restitution was the same evidence which was relevant to establish the cause of action on the written lease. The two essential facts, not stipulated by the parties and required to establish a restitu-

tionery remedy, were the damages resulting from the breach of the restrictive covenant and the reasonable rental value of the premises. Evidence relating to these two facts was relevant and introduced by the respondent to support his counterclaim. *Having either stipulated or introduced evidence on all the issues which were formed and tried by the lower court, the respondent should not be heard to say that he has been unfairly surprised or prejudiced because the petitioner did not amend his complaint. The respondent did not request a continuance or claim any lack of ability to meet the issues.*

We hold that the respondent was not deprived of a substantial right and, consequently, that the court on appeal cannot reverse the judgment of the trial court because of a defect in the pleadings.

For all the foregoing reasons, the petition to transfer should be granted and the judgment of the trial court should be affirmed.

Transfer granted.

Judgment affirmed.

DeBruler, C.J., Arterburn and Givan, JJ., concur. Jackson, J., concurs in result.

NOTE: Reported in 246 N. E. 2d 191.