FRANK LEIST *v*. AUTO-OWNERS INSURANCE COMPANY.

[No. 2-173A21. Filed June 6, 1974. Rehearing denied September 26, 1974. Transfer denied February 24, 1975.]

*Wade R. Bosley,* of Marion, for appellant.

*Albert C. Harker, Kiley, Osborn, Kiley, Harker & Rogers,* of Marion, for appellee.

### CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Frank Leist (Leist) appeals from a trial court injunction granted to Plaintiff-Appellee Auto-Owners Insurance Company (Auto-Owners) enjoining him from pursuing an action before the American

Arbitration Association to determine his personal injury damages pursuant to an uninsured motorist provision in an automobile fleet insurance policy owned by Leist's employer, the Town of Jonesboro, Indiana (Employer Town).

We reverse with instructions.

## FACTS

The parties stipulated the facts, the most pertinent of which are:[1]

On December 26, 1969, Leist, in his capacity as Town Marshal, was operating a Town of Jonesboro automobile in which he was seriously injured in a collision with an automobile operated by an uninsured motorist.

Auto-Owners had previously issued to Employer Town *both* a workmen's compensation insurance policy and a fleet automobile liability policy and paid Leist workmen's compensation benefits of $11,976.12.

Pursuant to the provisions of Employer Town's liability policy, Leist then filed a Demand for Arbitration before the American Arbitration Association, seeking an award of damages for his injuries allegedly caused by the uninsured motorist's negligence. The policy contained this provision (in part) relating to uninsured motorist coverage:

> "2. LIMITS OF LIABILITY. . . . Any loss payable under the terms of Coverage D to or for any person shall be reduced by (c) the amount paid and the present value of all amounts payable to him under any workmen's compensation law, disability benefits law or any similar law, . . . ." (Hereinafter referred to as the Set Off Clause.)

Before his Demand could be determined, Auto-Owners filed a Complaint against Leist for declaratory judgment and injunction restraining him from pursuing arbitration.

After considering the written stipulations and briefs submitted by the parties, the trial court, on August 18, 1972,

---

1. We note that Auto-Owners is the uninsured motorist insurer as well as the workmen's compensation carrier.

permanently enjoined Leist from seeking determination of damages by arbitration, supporting this decision with Conclusions of Law. Those bearing on the issues are:

"3. That by operation of law the uninsured motorists provision of the fleet automobile liability insurance policy #480202 09087485 owned by the Town of Jonesboro, Indiana, were in full force and effect on December 26, 1969.

"*4. That the defendant is entitled to recover from the plaintiff the sum of $10,000.00 under the uninsured motorist provisions of the fleet automobile liability insurance policy #480202 09087485 owned by the Town of Jonesboro, Indiana.*

"*5. That the plaintiff has a right of subrogation to recover the $11,976.12 workmen's compensation benefits paid to the defendant under workmen's compensation insurance policy #441702 09091528 owned by the Town of Jonesboro, Indiana.*

"*6. That the plaintiff is entitled to deduct the $11,976.12 workmen's compensation benefits it paid to the defendant under the workmen's compensation insurance policy #441702 09091528 owned by the Town of Jonesboro, Indiana, in payment to said defendant of the $10,000.00 proceeds due him pursuant to the uninsured motorist provisions of the fleet automobile liability insurance policy #480202 09087485 owned by the Town of Jonesboro, Indiana.*

"7. That further proceedings in the defendant's demand for arbitration before the American Arbitration Association will be useless.

"8. That the defendant take nothing under the uninsured motorist provisions of the fleet automobile liability insurance policy #480202 0908745 owned by the Town of Jonesboro, Indiana.

"9. That the defendant should be permanently restrained and enjoined from further action in his demand for arbitration against the plaintiff." (Emphasis supplied.)

Leist's Motion to Correct Errors recited as error that:

"1. The decision of the trial court to allow Auto-Owners to be subrogated to the Ten thousand dollars ($10,000.00) awarded under the uninsured motorist provision of the fleet liability policy is a decision that is contrary to law."

Attached to the Motion to Correct Errors, however, is a Memorandum which expanded on the sole error stated in the Motion itself.

## ISSUES

ISSUE ONE.     Did Leist change his theory of the case upon appeal and was his Motion to Correct Errors sufficiently specific to preserve his allegation of trial court error?

ISSUE TWO.     May Auto-Owners use the Set Off Clause in the automobile insurance policy to reduce sums payable thereunder by the amount of workmen's compensation benefits received by Leist?

ISSUE THREE.   Does Auto-Owners have a right to be subrogated to any amounts due Leist from the uninsured motorist proceeds?

As to ISSUE ONE, Auto-Owners contends that Leist changed his "theory of the case" from one of illegality of the Set Off Clause in the automobile liability insurance policy to whether or not Auto-Owners, as the workmen's compensation carrier, could be subrogated to the proceeds payable to Leist under the uninsured motorist coverage . . . and thereby waived consideration of this latter issue on appeal.

Further, Auto-Owners contends that Leist waived the issue regarding the Set Off Clause in Employer Town's automobile insurance policy because it was not preserved in his Motion to Correct Errors as required by Rule TR. 59(B) and (G).

In response, Leist contends that he did not change his theory on appeal because he argued the subrogation issue at trial in his trial brief as did Auto-Owners and the trial court found subrogation to be an issue in the case by entering a Conclusion of Law thereon.

Leist points to certain language in his Memorandum in Support of the Motion to Correct Errors as being sufficient to preserve the issue of legality of the Set Off Clause.

As to ISSUE TWO, Leist argues that Auto-Owners, as the automobile liability insurer, cannot reduce or limit its uninsured motorist coverage by the device of a Set Off Clause,

because to do so is in derogation of the Indiana Uninsured Motorist Statute.

Auto-Owners' response is that the purpose of such a clause is to avoid double recovery and that the uninsured motorist endorsement effectively places the insured in an equivalent position to that which he would have occupied had the tort-feasor been insured with the minimum automobile liability insurance coverage.

As to ISSUE THREE, Leist contends that Auto-Owners, as the workmen's compensation carrier, has no subrogation rights to proceeds payable to him pursuant to the uninsured motorist endorsement. His right to these proceeds is a contractual right, and not a tort right, and, as such, gives the workmen's compensation carrier no subrogation rights because such carrier claims have been limited to tort actions against third party tortfeasors, or their insurers.

In response, Auto-Owners contends that the exercise of its subrogation rights is not limited to tort actions. Auto-Owners further argues that the Indiana Workmen's Compensation Act, IC 1971, 22-3-2-1, Ind. Ann. Stat. § 40-1201 (Burns Supp. 1973), specifically entitles the carrier subrogation rights to amounts recovered by the injured employee regardless of their source.

## DECISION

ISSUE ONE.

CONCLUSION—Leist did not change his "theory of the case" on appeal and the Memorandum in Support of the Motion to Correct Errors was sufficiently specific to preserve the issue of the legality of the Set Off Clause.

Cases prior to adoption of the Indiana Rules of Procedure (effective January 1, 1970) had adopted the principle that an appellant may not approach the case upon a theory different from the one relied upon at trial [*Stazinski* v. *New York Central R.R. Co.* (1966), 140 Ind. App. 234, 220 N.E.2d 537;

*Wilson* v. *Dexter* (1963), 135 Ind. App. 247, 192 N.E.2d 469]. However, there is nothing in these cases that prevents a defendant-appellant, such as Leist, from arguing on appeal an issue treated at trial by both parties and upon which the trial court entered a Conclusion of Law.

It is likely these cases are obsolete. Justice Hunter, commenting on the "new" procedural rules in *Ayr-Way Stores, Inc.* v. *Chitwood* (1973), 261 Ind. 86, 90, 300 N.E.2d 335, 338, referred to comments in a previous case:

> " 'This new code, as regards the pleadings in a civil action, closely parallels the "notice pleading" enunciated in the Federal Rules of Civil Procedure and currently used by the federal district courts. It must be presumed that the trend and expressed legislative intent is one of simplifying the procedure of pleading.' " (Original emphasis.) (Quoting from *Morrison's Southern Plaza Corp., et al.* v. *Southern Plaza, Inc.* (1969), 252 Ind. 109, at 121, 246 N.E.2d 191, at 198.)

Recently,[2] and more specifically, Judge Sullivan quoted approvingly from *Bielat* v. *Folta* (1967), 141 Ind. App. 452, 454, 229 N.E.2d 474, 475, this language:

> " 'Appellees' argument and decisions relied on relating to a departure from the "theory of the case" have no application here. The rule that parties will be held to trial court theories by the appellate tribunal does not mean that no new position may be taken, or that new arguments may not be adduced; *all that it means is that substantive questions independent in character and not within the issues or not presented to the trial court shall not be first made upon appeal.* Questions within the issues and before the trial court are before the appellee [sic] court, and new arguments and authorities may with strict priority be brought forward.' " (Emphasis supplied.) 307 N.E.2d at 905.

Although Auto-Owners, as Plaintiff below, did not include the issue of subrogation in its Complaint, it nevertheless argued the issue in its trial brief as did Leist. The subrogation and Set Off Clause issues are closely related and were

---

2. *Danes* v. *Automobile Underwriters, Inc.* (1974), 159 Ind. App. 505, 307 N.E.2d 902.

both treated by the trial court as issues in its Conclusions of Law.

A motion to correct errors should be read with its supporting memorandum to ascertain if an error has been preserved on appeal:

"Although the Department's Motion to Correct Errors is couched in general language, attached to it was a supporting Memorandum containing argument which specifically indicated the Department's position. . . . *Reading the Motion to Correct Errors* which is included in the Department's brief *with the supporting Memorandum it is apparent that the Department has substantially complied with Rule TR. 59*" (Emphasis supplied.) *Indiana Department of State Revenue* v. *Frank Purcell Walnut Lumber Co.* (1972), 152 Ind. App. 122, 126, 282 N.E.2d 336, 339.

Trial Rule 59(B) requires that "The statement of claimed errors shall be specific rather than general. . . ." Just as important is the second part of that same sentence which additionally requires that the statement "be accompanied by a statement of the facts and grounds upon which the errors are based."

Leist appears to use the words "set off" and "subrogate" interchangeably in his Motion to Correct Errors and the Memorandum in Support of the Motion to Correct Errors. While the Motion to Correct Errors itself refers only to "subrogated," the "Second Argument" of the Memorandum cites and discusses cases and uses language which indicate error is attributed both to the illegality of the Set Off Clause and to any right of subrogation, *e.g.:*

"Thus, in the present case, an attempted set-off under workmen's compensation would violate the public policy of the uninsured motorist statute."

To interpret Rule TR. 59(B) so narrowly as to isolate and compartmentize the Motion and its supporting Memorandum would inject a rigidity not contemplated by the framers of the Rules: ". . . They shall be construed to secure the just, speedy and inexpensive determination of every action." (Rule TR. 1.)

In terms of Harvey and Townsend's comment that "TR. 59 is the bridge between the trial and appellate court systems" Leist has successfully crossed over that bridge . . . he has substantially complied with Rule TR. 59(B) and (G) under the particular circumstances of this case. 4 INDIANA PRACTICE, p. 129.

ISSUE TWO.

CONCLUSION—The Set Off Clause in the automobile insurance policy is in derogation of the Indiana Uninsured Motorist Statute and therefore may not be used to diminish proceeds payable thereunder by workmen's compenastion benefits received by Leist.

The Indiana Uninsured Motorist Statute, IC 1971, 27-7-5-1, Ind. Ann. Stat. § 39-4310 (Burns Supp. 1973), states in part:

> "MOTOR VEHICLE LIABILITY—NONINSURED VEHICLE COVERAGE—REJECTION IN WRITING.—*No automobile liability or motor vehicle liability policy* or insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be* delivered or *issued* for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, *unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14 [§ 47-1057]*, as amended heretofore and hereafter, under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." (Emphasis supplied.) (§ 39-4310 herein.)

The "limits for bodily injury or death set forth in Acts 1947, chapter 159, sec. 14" are specified to be "ten thousand dollars [$10,000] because of bodily injury to or death of any one [1] person" and $20,000 because of bodily injury to or death of two persons and $5,000 as to destruction of property. IC 1971, 9-2-1-15, Ind. Ann. Stat. § 47-1057 (Burns 1965 Repl.) (Herein referred to as § 47-1057.)

The words "unless coverage is provided . . . in limits for bodily injury or death set forth . . ." in § 47-1057, read in conjunction with the specific limits specified in § 47-1057, reveal a legislative intent that the uninsured motorist coverage be not less than the limits specified in § 47-1057. There is no limiting or modifying language in either statute.

Displeased with § 39-4310 (the Indiana Uninsured Motorist Statute), insurers have mounted frequent attacks against it, usually in the form of restrictive policy clauses. In Indiana such attacks have been singularly unsuccessful.

Construing the two statutes together, a federal court concluded, and rightfully so, that the limits defined are *minimum limits* below which coverage may not go:

> "Since the statutes simply provide that each policy of insurance issued must contain uninsured motorist protection *in minimum amounts,* . . . it follows that *any attempt on the part of an insurer to limit the effect of such clauses must be in derogation of the statute."* (Emphasis added.) *Simpson* v. *State Farm Mutual Automobile Insurance Co.,* 318 F.Supp. 1152 (S.D. Ind. 1970), at 1156.

In passing, a similar conclusion was reached in *Indiana Insurance Co.* v. *Noble* (1970), 148 Ind. App. 297, 265 N.E. 2d 419:

> "Purpose and object of uninsured motorist coverage must be considered in the statutory framework of *minimum coverages required by law.* Carrigan v. Allstate Ins. Co., 108 N.H. 131, 229 A.2d 179 (1967)." (Emphasis supplied.) 148 Ind.App. at 307, 265 N.E.2d at 426.

Chief Judge Hoffman carefully examined the cases in which restrictive policy clauses were struck down in *Patton* v. *Safeco Insurance Co. of America* (1971), 148 Ind. App. 548, 267 N.E.2d 859, concluding, as do we, that § 39-4310 set a *minimum* amount which the insured must recover and not a maximum amount beyond which the policyholder may not recover.

It would seem that if the legislature had intended to allow uninsured motorist insurers to undermine the statutorily required endorsement set forth in § 39-4310 by limiting their

liability with workmen's compensation set off clauses, it presumably would have so provided.

In examining the effect of an excess-escape clause in *Patton,* the court spoke to legislative intent:

> "If the Legislature had intended to limit the recovery of persons injured by an uninsured motorist to the limits of one policy, even though such persons are covered by more than one policy, § 39-4310, *supra,* would be directed at the injured parties and not at each policy of insurance. Therefore, the 'excess-escape' clause, being an attempt by the insurer to limit the application of § 39-4310, *supra,* is in derogation of said statute, invalid and unenforceable." 148 Ind. App. at 555, 267 N.E.2d at 864.

Another recent case in this court scrutinized an exclusionary clause purporting to limit uninsured motorist coverage to accidents growing out of the operation or occupation of the insured vehicle and reached the same result:

> "We, therefore, hold that the exclusion above quoted is in conflict with Acts 1965, Chapter 138, § 1 as found in Ind. Ann. Stat. § 39-4310 (Burns 1965), IC 1971, 27-7-5-1 to the extent that it attempts to limit uninsured motorist coverage to accidents growing out of the operation or occupation of the insured vehicle.
>
> . . .
>
> " '. . . such restrictions upon the coverage (so long as they are not specifically authorized by the state's uninsured motorist legislation) are against the public policy and therefore void.' " (Emphasis added.) (Quoting from *A Guide to Uninsured Motorists Coverage,* Widiss (1969), p. 29.) *Cannon* v. *American Underwriters, Inc.* (1971), 150 Ind. App. 21, 26-27, 275 N.E.2d 567, at 570.

Is a Set Off Clause as to workmen's compensation benefits received by an insured to be distinguished from other restrictive policy clauses, such as those deducting from the proceeds other insurance ("excess-escape" clauses) or those denying coverage if the primary insured vehicle was not involved?

We can ascertain no basis for such a distinction. The rationale of *Simpson, Patton,* and *Cannon* seems equally applicable to a diminution of uninsured motorist policy proceeds

because of workmen's compensation benefits received by the insured.

Our conclusion is strengthened by the principle that insurance contracts as well as statutes regulating insurance have traditionally been interpreted most favorably to the insured. *See, Town and Country Mutual Insurance Co.* v. *Owens, Admr. et al.* (1969), 143 Ind. App. 522, 241 N.E.2d 368; *Red 73 Creamery, Inc.* v. *Lumbermen's Mutual Casualty Co.* (1966), 138 Ind. App. 273, 209 N.E.2d 896.

A necessary by-product of our conclusion that the Set Off Clause is invalid is that Conclusions of Law 4 and 6 are "clearly erroneous" because they allow set off of the workmen's compensation benefits against the uninsured motorist coverage proceeds. Rule TR. 52(A); Rule AP. 15(M).

Two cases cited by Auto-Owners in support of its position that the Set Off Clause is necessary to avoid double recovery and to place the insured in an equivalent position to that which he would have occupied had the tortfeasor been insured with minimum automobile liability insurance coverage need comment. They are *Hackman* v. *American Mutual Liability Insurance Co.* (1970), 110 N.H. 87, 261 A.2d 433, and *Ullman* v. *Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 269 N.E.2d 295, . . . and are inapplicable.

The two states involved, New Hampshire and Illinois, are among jurisdictions construing their uninsured motorist statutes as limiting recovery to the statutory limit. The *Hackman* court interpreted the New Hampshire statute as providing protection up to the minimum statutory limit and was not designed to provide the insured with greater insurance protection than would have been available had the insured been injured by an insured motorist with a policy containing minimum statutory limits. The *Ullman* court specifically limited coverage pursuant to the Illinois Uninsured Motorist Statute to that required by the Illinois Financial Responsibility Law. Differently stated, these two states construed the wording of their statutes to give uninsured motorist protec-

tion in a maximum amount rather than a minimum amount. *See, State Farm Mutual Automobile Insurance Co.* v. *Cahoon* (1971), Ala., 252 So.2d 619, 624.

In many other states the purpose of the uninsured motorist coverage is construed to require protection in a minimum amount. In these jurisdictions courts have unhesitatingly and universally found that set off clauses in automobile insurance policies which allow deduction of workmen's compensation benefits from the proceeds payable thereunder are in derogation of their respective statutes. This is true in states with statutes similarly worded to § 39-4310. *See, Aldcroft* v. *Fidelity & Casualty Co.* (1970), 106 R.I. 311, 259 A.2d 408; *Booth* v. *Seaboard Fire & Marine Insurance Co.* (8th Cir. 1970), 431 F.2d 212; *Safeco Insurance Co. of America* v. *Jones* (1970), 286 Ala. 606, 243 So.2d 736; *Williams* v. *Buckelew* (1970), (La. App.) 246 So.2d 58; *Southeast Title & Insurance Co.* v. *Austin* (1970) (Fla.), 202 So.2d 179. *See also,* COUCH, INSURANCE 2d § 82.1:12 (Cum. Supp. 1973).

The fear of so-called double recovery voiced by Auto-Owners has been frequently raised, and rejected, as a justification for restrictive policy provisions, *e.g., Patton* v. *Safeco Insurance Co. of America, supra:*

> "Our decision in this case should not be interpreted to mean that an insured is entitled to double recovery. The absolute limit of recovery in *all* cases is the amount of the damages sustained for personal injuries." (Original emphasis) 267 N.E.2d at 864.

However, by virtue of our holding under this issue and under ISSUE THREE, we do not reach and need not decide any question relating to so-called double recovery.

ISSUE THREE.

CONCLUSION—Auto-Owners is not entitled to be subrogated to the uninsured motorist proceeds because its right to subrogation has not ripened under the Workmen's Compensation Statute.

As an alternative to reaching the uninsured motorist proceeds by set off, Auto-Owners seeks to cause these proceeds to "vanish" (as Leist says) by claiming it is *subrogated* to any amounts due Leist from the uninsured motorist proceeds.

The trial court's injunction, as we see it, had the effect of denying Leist an opportunity to determine the total amount of his damages while awarding to Auto-Owners subrogation rights before Leist had received or even pursued recovery from a third party.

Our Conclusion stated above may be expanded by stating such action was premature. Under the facts of this case, the rights of Auto-Owners as a subrogee remain contingent until there is a liquidated sum over which he may exercise these rights.

Auto-Owners seeks succor from the Workmen's Compensation Statute because it provides that an insurer who has paid compensation "for injuries sustained under circumstances which create in some other person legal liability to pay damages, then the employer or its insurer shall have the right to proceed, through subrogation, against said other person." The pertinent statute, IC 1971, 22-3-2-13, Ind. Ann. Stat. § 40-1213 (Burns Supp. 1973), provides no nourishment for this proposition:[3]

> ". . . In such case, however, if the action against other person is brought by the injured employee or his dependents *and judgment is obtained and paid,* and accepted *or settlement* is made with such other person, either with or *without suit, then from the amount received by such employee* or dependents there shall be paid to the employer, or such employer's compensation insurance carrier, the amount of compensation paid to such employee or dependents, plus the medical, surgical, hospital and nurses' services and sup-

---

3. The statute provides an exception where the injured employee fails to institute legal proceedings against the third party tortfeasor within two years. In such an eventuality, the carrier is entitled to collect in its own name or that of the injured employee pursuant to legal proceedings initiated by the carrier itself, using the amount of benefits already paid as the liquidated claim upon which suit is maintained. *Hartford Accident & Indemnity Co.* v. *Pettibone,* 56 F.Supp. 328 (N.D. Ind. 1944); *Hall* v. *Pennsylvania Greyhound Lines* (1951), 121 Ind. App. 219, 96 N.E.2d 348.

plies and burial expenses paid by the employer or such employer's compensation insurance carrier and the liability of the employer or such employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate, whether or not one [1] or all of the dependents are entitled to share in the proceeds of the settlement or recovery and whether or not one [1] or all the dependents could have maintained the action or claim for wrongful death." (Our emphasis.)

Subrogation is contemplated . . . *after* the injured employee has secured a satisfied judgment or settlement. The time sequence contemplated by this statute has not yet been realized as the posture of the parties now is that Leist's movement in the direction of arbitration has been interrupted by an injunction (founded on set off (ISSUE TWO) and subrogation).

Ultimate liability, if any, in terms of negligence of the third party tortfeasor, contributory negligence, and damages have not yet been determined.

The issue of subrogation can not therefore be resolved unless and until these subsequent proceedings are pursued to final determination.

We are aware of the subrogation rights granted an insurance carrier by the Workmen's Compensation Act and the case law arising therefrom: *Bebout* v. *F. L. Mendez & Co.* (1941), 110 Ind. App. 28, 37 N.E.2d 690; *Weis* v. *Wakefield* (1941), 111 Ind. App. 106, 38 N.E.2d 303; *Forcum-James, Inc.* v. *Johnson* (1945), 115 Ind. App. 655, 59 N.E.2d 730; *Fidelity & Casualty Co.* v. *Miller* (1941), 111 Ind. App. 308, 38 N.E.2d 279; *Armstrong Cork Co.* v. *Marr* (1953), 124 Ind. App. 105, 111 N.E.2d 82; *Liberty Mutual Insurance Co.* v. *Stitzle* (1942), 220 Ind. 180, 41 N.E.2d 133; *Miami County Bank* v. *State, ex rel.* (1916), 61 Ind. App. 360, 112 N.E. 40; *Maryland Casualty Co.* v. *Cleveland, etc. R. Co.* (1919), 74 Ind. App. 272, 124 N.E. 774; *Artificial Ice & Cold Storage Co.* v. *Ryan* (1935), 99 Ind. App. 606, 193 N.E. 710; *Pittsburgh, C., C. & St. L.R. Co.* v. *Keith* (1925), 89 Ind. App. 233, 146 N.E. 872; *Pittsburgh, C., C. & St. L.R. Co.* v. *Parker* (1921), 191 Ind. 686, 132 N.E. 372. *See also,* SMALL, WORKMEN'S

COMPENSATION LAW OF INDIANA, § 11.12 (Sum. Supp. 1968).

We are also aware of the subrogation rights afforded an insurer by the Uninsured Motorist Statute:

> The policy or indorsement affording the coverage specified in this act may further provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death because of which such payment is made, *and the insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury* or death for which payment is made by the insurer. *Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made,* as in their interest may appear, by proper action in any court of competent jurisdiction. [Acts 1965, ch. 138, § 1, p. 215; 1969, ch. 124, § 1, p. 272.] (Emphasis supplied).

This statute, like the Workmen's Compenastion Statute, allows no right of subrogation until there is judgment, settlement or a refusal of the insured to assert his right of recovery.

Under both of these statutes a concomitant of the necessity for judgment or settlement in favor of the injured employee prior to subrogation is the existence of liability and proven damages.[4] The granting of the injunction was therefore premature and to decide this appeal we need not speculate as to when, or if, rights of subrogation may arise under either the Workmen's Compensation Statute or the Uninsured Motorist Statute, or if there be any conflict between them.

---

4. The presence of such a liquidated claim to subject the insurer to liability under the uninsured motorist endorsement, is recognized by previous Indiana decisions: *Indiana Insurance Co.* v. *Noble* (1970), 148 Ind. App. 297, 265 N.E.2d 419; *Simpson* v. *State Farm Mutual Automobile Insurance Co., supra; Patton* v. *Safeco Insurance Co. of America, supra; Ely* v. *State Farm Mutual Automobile Insurance Co.* (1971), 148 Ind. App. 586, 268 N.E.2d 316. *See also,* 44 AM.JUR.2d §§ 1454 *et seq.;* 45 C.J.S. §§ 897 *et seq.;* 36 A.L.R. p. 1267.

Conclusions of Law 4 to 9, inclusive (allowing set off and subrogation), are therefore necessarily clearly erroneous and must be set aside. Rule TR. 52(A). *See, Pepka* v. *Branch* (1973), 155 Ind. App. 637, 294 N.E.2d 141; *Hiatt* v. *Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834.

Thus, our holding is strictly limited to the illegality of the Set Off Clause and the prematurity of any right of subrogation by Auto-Owners to the uninsured motorist coverage proceeds until such time as the liability, if any, of the third party tortfeasor is established by judgment, settlement or arbitration and Leist's total damages determined.

The summary judgment of the trial court is accordingly reversed, the injunction dissolved, and this case is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 311 N.E.2d 828.