Morrow *et al. v.* United States Mortgage Company.

Filed May 29, 1884.

---

No. 9459.

## MORROW ET AL. *v.* UNITED STATES MORTGAGE COMPANY.

FOREIGN CORPORATION.—*Filing Appointment of Agent.—Contracts by.*—An instrument made by a foreign corporation, and deposited in the clerk's office pursuant to section 3022, R. S. 1881, showing that A. has been appointed "its agent for transacting business at I.," makes A. its general agent at that place, so that his acts will bind the corporation.

SUBROGATION.—*Mortgage.—Agreement.*—Where an assignee of the equity of redemption pays and takes up one of several notes secured by mortgage, under an agreement with the mortgagee that he may hold them in the same manner as the mortgagee held them, he is entitled to the same priority of lien that a stranger would have who took an assignment thereof.

From the Superior Court of Marion County.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellants.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker, E. Daniels, W. Henderson, W. Wallace, L. Wallace* and *L. Newberger,* for appellee.

NIBLACK, J.—On the 17th day of July, 1875, James B. Hunter and wife executed to the United States Mortgage Company a mortgage on certain real estate, in the city of Indianapolis, to secure the payment of three bonds, or writings obligatory, for the repayment of money loaned, the first for $4,000, payable on the 1st day of August, 1879, the second for $5,000, payable on the 1st day of August, 1881, and the third for $5,000, payable on the 1st day of August, 1883, all at nine per cent. interest until maturity, and ten per cent. interest thereafter. Coupon notes were, also, executed for the

amount of interest to fall due on each bond before maturity in such numbers and in such manner as to make the interest payable semi-annually. The mortgage provided that in default of payment of any instalment, whether of principal or of interest, the entire indebtedness should become due and collectible at the option of the mortgagee. Soon after the execution of the mortgage, one Samuel Hester became, through intermediate conveyances, the ostensible owner of the mortgaged property, and executed a junior mortgage upon it to one Thomas J. Trusler. Hester made default and Trusler obtained a decree of foreclosure of his junior mortgage, and the mortgaged property was ordered to be sold subject to the senior mortgage. The property was accordingly sold on the 3d day of March, 1877, at sheriff's sale, and Trusler became the purchaser. During the succeeding year, Trusler assigned his certificate of purchase to Wilson Morrow one of the appellants, who, on the 5th day of March, 1878, received a sheriff's deed for the mortgaged property, coming into possession soon afterwards under his deed. Previous to the 1st day of August, 1878, the United States Mortgage Company, the appellee here, transmitted the coupon notes, becoming due at that date, to the Bank of Commerce of the city of Indianapolis, endorsed as follows :

"Pay Bank of Commerce, Indianapolis, for collection, account of U. S. Mortgage Company.

"W. P. ELLIOTT, Assistant Secretary."

On the 3d day of August, 1878, under some kind of a special arrangement with William Henderson, then sole resident agent of the mortgage company, Morrow paid the amount due upon, and took up, these coupon notes. Early in February, 1879, Morrow, under some similar arrangement, paid the amount due upon, and took up, the coupon notes which had fallen due on the 1st day of that month, and had been endorsed as above to the Bank of Commerce for collection.

Morrow declined to pay any further instalments of interest, and the mortgage company commenced this suit to foreclose

its mortgage, making Hunter and wife, Morrow and wife, and others, having had, or then claiming to have, an interest in the mortgaged property, defendants in the action. Morrow, first in his answer and afterwards by way of cross complaint, charged that he paid and took up the coupon notes, which had been endorsed to the Bank of Commerce for collection as above stated, under an.express agreement with the mortgage company that he was to become thereby the owner of such notes, and to hold them in the same manner as that in which the company had theretofore held them, that is to say, as a prior lien under the mortgage, and demanded that the amount paid by him upon said coupon notes, with interest, should be decreed to be a first lien in his favor.

Issues being formed, the court below at special term made a finding upon the controlling facts in the cause, coming to the conclusion, amongst other things, that Morrow had become the owner and holder of the coupon notes lastly above mentioned, as claimed by him, and that there was due him for principal and interest upon such coupon notes the sum of $1,470, which, in the decree of foreclosure which ensued, was declared to be a lien under the mortgage prior to the aggregate amount due the mortgage company for principal and subsequent instalments of interest.

Upon an appeal to the general term, the decree at special term was reversed upon the ground that the evidence failed to show that Henderson, the mortgage company's agent, and through whom Morrow obtained possession of the coupon notes in question, had either the power or the authority to enter into, and to bind the company by, such an express agreement as that set up and relied upon by Morrow. Morrow and his co-defendants below have appealed to this court, questioning only the correctness of the decision at general term as between Morrow on the one side and the mortgage company on the other.

At the time Hunter executed the mortgage sued on in this action, Alexander C. Jameson was a joint agent for the mort-

gage company with Henderson, and as between them and the company, he and Henderson acted under a written contract entered into on the 8th day of October, 1874, commencing with a preamble as follows:

" Whereas, William Henderson and Alexander C. Jameson of Indianapolis, Indiana, have been appointed agents of 'The United States Mortgage Company,' a corporation chartered by the Legislature of the State of New York, for the purpose of making loans for said company on bond and mortgages, in the State of Indiana, and collecting moneys to become payable upon such loans."

On the 26th day of December, 1874, the mortgage company caused to be deposited in the office of the clerk of the Marion Circuit Court of this State, a duly executed certificate of appointment, with order pertaining thereto annexed, the body of which was in these words:

" Whereas, ' The United States Mortgage Company,' a corporation created by the laws of the State of New York, located in the city of New York, have appointed William Henderson and Alexander C. Jameson its agents for transacting business in the city of Indianapolis, county of Marion and State of Indiana:

" Now, Therefore, it is ordered by said ' United States Mortgage Company,' that any citizen or resident of the State of Indiana, having a claim or demand against the said ' United States Mortgage Company,' arising out of any transaction in said State of Indiana, with such agents, may sue for the same in any court of competent jurisdiction, and maintain an action in respect to the same, in any such court in the said State, and that service of process in such action, and on said agents, shall authorize judgment, and all other proceedings against said ' United States Mortgage Company.'

" S. D. BABCOCK, President.

" A. J. KOCK, Secretary.

" NEW YORK, Dec. 23d, 1874."

Henderson and Jameson acted accordingly as agents in the

city of Indianapolis, until the latter part of February or the early part of March, 1878, when, by the verbal directions of the secretary of the mortgage company, the entire business of the company at that city was transferred to and placed in the hands of Henderson alone.

Morrow and Henderson do not agree as to the precise terms upon which the former paid and took up the coupon notes upon which the former's counter-claim is based, but there was evidence tending to establish that these notes were paid and taken up upon the terms and conditions charged in Morrow's cross complaint. If, therefore, the alleged terms and conditions were such as Henderson was presumably authorized to enter into on behalf the mortgage company, we can not disturb the finding of the court below at special term.

Section 1 of the act of June 17th, 1852, concerning foreign corporations, now known as section 3022, R. S. 1881, enacts, that "Agents of corporations not incorporated or organized in this State, before entering upon the duties of their agency in this State, shall deposit in the clerk's office of the county where they propose doing business therefor the power of attorney, commission, appointment, or other authority under or by virtue of which they act as agents." 1 R. S. 1876, 373.

The certificate of his appointment, deposited with the clerk of the Marion Circuit Court, as above, constituted Henderson a general agent for the transaction of the mortgage company's business at the city of Indianapolis, and became, under this section of the statute, the measure of his authority when acting on behalf of the company. Third parties were not, consequently, required to look to, or take notice of, any private agreement between him and the company, which might be construed as placing a narrower limit upon his agency.

If Morrow had paid and taken up the coupon notes in controversy as a junior incumbrancer merely, and without any express agreement with the mortgage company, he would, at his option, have become subrogated to the rights of the company in the notes, subject only to the condition that he could

not enforce their payment as a lien against the mortgaged property, while any part of the mortgage debt thereafter to become due remained unpaid. *Vert* v. *Voss*, 74 Ind. 565; *Rice* v. *Morris*, 82 Ind. 204; *Carithers* v. *Stuart*, 87 Ind. 424; Sheldon Sub., section 4.

But the express agreement, which the evidence tended to establish, was that Morrow, on paying and taking up the notes, should be permitted to hold them in the same manner as the company had theretofore held them, that is to say, as a prior and subsisting lien enforceable against the mortgaged property by appropriate foreclosure proceedings. That amounted, in legal effect, to a waiver on the part of the company of its right to insist upon a postponement of Morrow's claim for reimbursement until the remainder of the mortgage debt was satisfied, as it might have done in the absence of such an agreement, and fairly overcame the presumption which would have been otherwise operative against him, that he took up the coupon notes merely to protect his title acquired through the junior mortgage. See, also, Sheldon Subrogation, section 22. This implied waiver was doubtless assented to under the belief that the mortgaged property was sufficient for the payment of all the liens upon it.

The agreement as to the manner in which Morrow should hold the notes after paying them was incidental merely to the collection of certain instalments of interest accruing upon the principal debt, and was, as we think, clearly within the scope of Henderson's authority as general agent of the company. In its substantial import it was nothing more than an agreement that the doctrine of subrogation should be modified in one respect in its application to the notes in the hands of Morrow.

In our view of the case, therefore, the question as to Henderson's alleged want of authority to sell and transfer a note belonging to the mortgage company, argued by counsel, is in no way involved in the decision of this cause. Sheldon, *supra*, at section 6, says: "Subrogation to the rights of a creditor is to be distinguished from an assignment of the debt, by

the fact that the latter assumes the continued existence of the debt, while the former follows only upon its payment. Before the right of subrogation accrues, there must be a discharge of the legal obligation resting upon the party ultimately liable." The same author, as a part of section 13, further says: "The true principle, I apprehend, is, that where money due upon a mortgage is paid, it shall operate as a discharge of the mortgage or in the nature of an assignment of it, as may best serve the purposes of justice and the just intent of the parties."

Taking all the facts and circumstances which the evidence tended to prove into consideration, we would not feel justified in holding that the court below at special term erred in its conclusion that Morrow had become subrogated to all the rights of the mortgage company in the indebtedness set up by him as a counter-claim. *Parsons* v. *Tillman*, 95 Ind. 452.

The judgment at general term is reversed with costs, and the cause remanded with instructions to the general term to affirm the judgment at special term.

ELLIOTT, C. J., did not participate in the decision of this cause.

Filed June 3, 1884.