TRADERS & GENERAL INSURANCE COMPANY, Appellant,

v.

Patsy Black REYNOLDS et al., Appellees.

No. 8082.

Court of Civil Appeals of Texas, Texarkana.

Feb. 29, 1972.

Rehearing Denied March 3, 1972.

Royal Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Cahill Hitt, Hitt & Pesek, Texarkana, Jim Lovett, Clarksville, Jack Carter, Raffaelli, Hawkins & Carter, Texarkana, for appellees.

CHADICK, Chief Justice.

This is an appeal from a trial court judgment allowing recovery under the uninsured motorist coverage of an automobile insurance policy.

Mrs. Patsy Black Reynolds was severely injured in a collision between the automobile she operated and one driven by Mike Lach. At the time of the collision a Traders & General Insurance Company policy afforded Mrs. Reynolds automobile liability insurance coverage; her policy contained a provision for standard form uninsured motorist coverage. At the time, also, Mike Lach had automobile public liability insurance provided by a Farmers Insurance Group policy. Mrs. Reynolds sued her own insurer, Traders & General Insurance Company, alleging that Mike Lach and Paul Pippins were racing each other at the time of the collision. And as a ground of recovery in the action, Mrs. Reynolds alleged Pippins was an uninsured motorist, that his negligence was a proximate cause of her injury and on that basis Traders & General was liable to pay her damages to policy limits by the terms of the uninsured motorist coverage.

Traders & General alleged, and it is undisputed, that plaintiff Reynolds had settled with Mike and Edna Lach and Farmers Insurance Group, their insurer, and executed a release for the sum of $10,000.00, and pleaded that such settlement barred Mrs. Reynolds' recovery under the uninsured motorist provision. Both Mike Lach and Paul Pippins were brought into the suit as third party defendants by the insurance company.

In the trial of the case, the trial judge refused to admit proof of the settlement between plaintiff Reynolds and the Lachs and their insurer or of the release to them executed by Mrs. Reynolds, but these matters are in the record by bill of exception.

It is undisputed that Pippins was uninsured. The jury found causative negligence on the part of both Lach and Pippins, and assessed Mrs. Reynolds' damages at $151,500.00. Judgment was rendered that Reynolds recover the sum of $10,000.00 from Traders & General Insurance Company (the policy limit), together with interest thereon, etc., and that Traders & General have recovery over against Paul Pippins, but granted Mike Lach's motion for judgment notwithstanding the verdict and adjudged that Traders & General take nothing from him. In summary, as the record stands, Mrs. Reynolds was damaged $151,500.00 and has received $10,000.00 in settlement with Mike Lach and his insurer, and has a judgment for $10,000.00 against her own insurer, Traders & General. The question to be settled by this appeal is whether or not Traders & General should be allowed credit for the amount the joint tort feasor Mike Lach and his insurer paid in the settlement with Mrs. Reynolds for release of her claim against them.

With candor that distinguishes a confident advocate, counsel for Mrs. Reynolds proffers for determination the keystone question in this appeal. The first counterpoint grounds affirmance on the proposition that " * * * those portions of the insurance contract relied upon by appellant are void;" and the second counterpoint on the affirmation that " * * * appellant has no valid right of subrogation against an insured joint tort feasor."

With the "intent and purpose" of providing "a means of protecting the conscien-

tious and thoughtful motorist" of Texas from "financial loss caused by negligent, financially irresponsible motorists," the Texas Legislature in 1967 enacted a law requiring that automobile liability insurance policies issued after the first day of October of that year provide uninsured motorist coverage unless a policy's named insured rejects the coverage in writing. The enactment adhered to existing statutory policy and practice evidenced by Art. 5.06, Insurance Code, by authorizing the State Board of Insurance to promulgate the policy forms for the uninsured motorist coverage. This authority and duty of the State Board of Insurance is mentioned twice in the original Act which now appears as Art. 5.06–1—Insurance Code, V. A.T.S. In execution of its responsibilities the State Insurance Board promulgated a form which appears in Part IV of the Traders & General Insurance Company policy in suit. Therein it is provided:

"In the event of payment to any person under this Part: (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; (b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this Part; (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; (d) if requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such person; in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys' fees incurred by it in connection therewith; (e) such person shall execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision."

The sources of authority for the foregoing policy provision is found, if at all, in Article 5.06–1.(3), viz.:

"(3) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurei making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement of judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness or disease, or death for which such payment is made, * * *."

The Appellee argues that to allow the insurer recoupment in multiple vehicle situations, as here, is "tantamount to holding that an insured has uninsured motorist coverage in one-car accidents only, and no coverage in multicar accidents." The argument runs that if Traders & General paid Mrs. Reynolds its policy limit of $10,000.00 but is immediately entitled to have the proceeds of the settlement of $10,000.00 Mrs. Reynolds made with the joint tort feasor Lach and his insurer, the uninsured motorist coverage she paid a premium for does not benefit her. This argument goes to the practicalities of the situation; it does not demonstrate that insurance to policy limits of $10,000.00 was not provided by the uninsured motorist coverage of the Traders & General policy as contemplated by law. But it does show clearly that uninsured motorist coverage under the circumstances of this case is of little or no monetary value to Mrs. Reynolds.

■ The fact that reparations payable under the uninsured motorist coverage

would produce nothing of value is urged as the factor that is inconsistent with and in derogation of Article 5.06–1, and is the vice that invalidates the policy provision allowing recoupment. The recoupment provision, it is argued, is an attempt on the part of the insurer to limit the effect of the uninsured motorist coverage and is a limitation on and in derogation of the mentioned Article. Fidelity & Casualty Company of New York v. Gatlin, 470 S.W.2d 924 (Tex.Civ.App. Dallas, 1971, writ action undetermined) is cited as primary authority. In that case it is said:

"Our law was obviously enacted by our Legislature for the benefit of the innocent victim of the financially irresponsible motorist. It should be liberally construed to fully accomplish that purpose. By enacting the law the Legislature did not attempt to fix any maximum limit of recovery, but merely established a minimum requirement. The statute is plain in its direction that each policy of insurance issued must contain uninsured motorist protection in minimum amounts, without qualification, and it necessarily follows that any attempt on the part of an insurer to limit the effect of such provision must be held to be in derogation of the statute itself."

There is no disposition, in reaching a decision in this case, to disagree with the rationale of the quoted statement in the context in which it is found, but reference to Art. 5.06–1.(3), above quoted, discloses that it authorizes recoupment. Recoupment cannot be in derogation of the statute, since the statute expressly extends that right to the insurer. Art. 5.06–1.(3) expressly provides that when an insurer makes payment to any person under the coverage required by the statute and subject to the terms and conditions of such coverage, the insurer making such payment shall to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any right of recovery of such person against any person or organization legally responsible for the bodily injury, etc., for which payment is made.

■ Recoupment provisions of an insurance policy that implement statutory recoupment authority are valid. A recent multi-vehicle case appears to be directly in point; the Waco Court of Civil Appeals held the insurance company's liability under uninsured motorist coverage was reduced by the amount of any sum paid its insured on judgments against an uninsured motorist and his insured joint tort feasor. The Court expressly held the recoupment provision of the insurance policy to be "authorized and sanctioned by Article 5.06–1." and by implication holds recoupment provision of the policy valid and not in derogation of nor incompatible with the statute. Jobe v. International Service Insurance Company, 474 S.W.2d 11 (Tex.Civ.App. Waco., writ action undetermined).

In reaching the conclusion that Appellee Reynolds' first counterpoint is not sustained by the record, some mention of public policy underlying the recoupment provision of Art. 5.06–1. is in order. Public policy evidenced by Art. 5.06–1. in practical effect makes protection against uninsured motorist mandatory, that is, a motorist purchasing automobile liability insurance must take positive action to have the coverage omitted. This public policy in its effect mandated an increase in insurance rates, and the Legislature had a legitimate interest in minimizing the increase. Recoupment on the part of the insurer would be a minimizing factor in the rating process, and legislative provision therefor would have a practical place in the scheme of near compulsory insurance.

Counsel's approach in urging the second counterpoint is as forthright as the presentation of the first. Appellees' brief says: "It is the position of Appellee Reynolds that Appellant has no subrogation right against Mike Lach or his insurance company since Mike Lach did not cause the loss of Appellant, and Appellee Reynolds did nothing to prejudice the right of Appellant to subrogate against the uninsured motorist, Pippins." Michigan Mutual Liability Company v. Karsten, 13 Mich.App. 46, 163 N.W.2d 670 (1968) is cited. In the course

of argument in Mrs. Reynolds' brief it is stated:

"The act of Mike Lach, the insured tort feasor, did not cause the loss to appellant; it was the act of Paul Pippins, the uninsured tort feasor.

"Under the terms of the insurance policy in question, for Appellant to suffer a loss there must be (1) legal liability to the insured by, (2) an uninsured motorist. Legal liability by an insured motorist does not cause a loss to Appellant. Appellant agreed to pay Appellee Reynolds 'all sums . . . which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury . . .' It did not agree to pay all sums for which an insured owner or operator would be legally responsible to pay as damages."

This quoted argument from the Appellees' brief does not take into account or give weight to jury findings of causative negligence on the part of Mike Lach nor the provisions of Article 5.06–1.(3) previously quoted, which in substance is carried forward into the recoupment provision of the Traders & General Policy. Though reiteration tends to stifle, the statutory provision for recoupment prevails; it provides that when an insurer makes a payment, the insurer is, to the extent of the payment made, entitled to the proceeds of any settlement or judgment resulting from the exercise of any right of recovery *the insured has against any person or organization legally responsible for the insured's bodily injury,* etc. The statute and the recoupment provisions are plain and clear. The insurer, Traders & General in this instance, may recoup any payment made in satisfaction of its obligation to Mrs. Reynolds by having the benefit of any payment Mike Lach made to her in settlement of damages he was legally responsible for causing. The jury finding that Mike Lach's negligence was a proximate cause of Mrs. Reynolds' injury is unquestioned. The Jobe v. International Service Insurance Company case appears to have

reached a like conclusion with that expressed here. See also Allstate Insurance Company v. Clarke, 471 S.W.2d 901 (Tex. Civ.App. Houston, 1971, writ action undetermined). The Appellees' second counterpoint is overruled.

Though other and different phases of the questions discussed have been presented and other questions tendered, resolution of issues other than those discussed will not require a different disposition of the appeal than is ordered. As the case was fully developed in the trial court, its judgment will be affirmed in part and reversed and judgment rendered in part. As modified, the judgment will award Appellee Reynolds recovery of $10,000.00 from Appellant Traders & General, but such award shall be credited with the $10,000.00 paid by Mike Lach and Farmers Insurance Group in settlement with Mrs. Reynolds; the cost in the trial court will be taxed against Traders & General, but Traders & General shall have judgment over and against Lach and Pippins for such costs; and it appears that Lach contributed substantially to the necessity of an appeal to this court, the cost of appeal will be taxed against Lach.