ROBERT GLIDDEN, Individually, and as Admr. of the Estate of Osee Glidden, Plaintiff-Appellant, *v.* THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Defendant-Appellee.

(No. 71-349; 

Second District—April 17, 1973.

SEIDENFELD, J., dissenting in part.

Yalden & Ridings, of Rockford, (Craig A. Ridings, of counsel,) for appellant.

Maynard & Brassfield, of Rockford, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The plaintiff, Robert Glidden, individually and as the administrator of his deceased wife's estate, brought a declaratory judgment action to determine the liability of defendant, The Farmers Automobile Insurance Association, under automobile insurance policies issued to plaintiff. From a judgment favoring the defendant, plaintiff appeals.

Defendant issued three automobile liability policies covering three

separate vehicles. Part IV of each policy offered protection against uninsured motorists and specified a $10,000 maximum payment allowable for each person and $20,000 for each accident. Part II of these policies provided expenses for medical services up to a maximum of $2000 for each person.

On August 31, 1970, plaintiff's wife, while a pedestrian, was struck and killed by an auto driven by an allegedly intoxicated uninsured motorist. The policies were in force and, under their provisions, plaintiff's wife qualified as an insured.

It was plaintiff's contention that the liability limits of all policies could be aggregated, entitling him to a maximum of $30,000 under Part IV of his coverage and an additional $6000 maximum, under Part II; that payment made under Part II coverage should not be credited against any award under Part IV; that defendant had no subrogation right to monies which might be recovered by plaintiff in a pending dram shop action; and that plaintiff was entitled to court costs and attorney's fees.

The trial judge ruled that, under Part IV, plaintiff was limited to a maximum of $10,000 and, under Part II, to $2000; that any recovery up to the maximum under Part II must be applied to reduce the liability, if any, under Part IV; that defendant was entitled to subrogation under Part IV, and that plaintiff was not entitled to attorney's fees or costs.

■■ On appeal, the first issue is whether the limits of liability of each policy, under Part IV coverage can be aggregated to a maximum of $30,000. In each policy, the pertinent provision of Part IV reads:

> "Other insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
>
> Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Defendant asserts that the second of the quoted paragraphs is applicable because plaintiff owns multiple policies; that the damages can-

not exceed $10,000, this figure being the highest of the applicable limits of the three policies, and that on the basis of the pro-rating directive, $3333.33 will be paid under Part IV of each policy.

Plaintiff argues that "other insurance" clauses are intended to avoid one company's paying a disproportionate amount of a loss which properly should be shared by another carrier and that, consequently, "other insurance" should be interpreted as insurance separate and distinct from the combined policies provided by defendant.

Plaintiff relies upon the case of *United Services Automobile Association v. Dokter*, 478 P.2d 583 (Nev. 1970), the pertinent facts being identical to those present except that there the insurance company had issued only two policies. The majority held that the insured could recover the limits of both policies because "other insurance" clauses become ambiguous when contained in more than one policy issued to an individual by the same company. The dissent stated:

"* * * The majority of the court indicates that there is no ambiguity in the 'other insurance' clause when two different insurance companies are involved, but that an ambiguity arises when the same insurance company issues two policies to the same person. I do not agree with this contention. We are concerned here with insurance policies and their interpretation, not insurance companies. A careful reading of the language in the 'other insurance' clause shows that it is free from ambiguity. The clause clearly states that the limit of liability is the highest amount of liability set forth in all policies involved, whether the policies are with the same company or different companies. The clause also clearly fixes the liability of a company under each policy on a pro rata share basis. *Horr v. Detroit Automobile Inter-Insurance Exchange*, 379 Mich. 562, 153 N.W.2d 655 (1967)."

The courts have taken varied approaches in determining the validity and interpretation of "other insurance" clauses contained in automobile liability insurance policies. (28 A.L.R.3d 551; *Putnam v. New Amsterdam Casualty Co.*, 48 Ill.2d 71, 75-80 (1970).) Having read all cases cited by both parties, we find controlling those general principles on "other insurance" which have been set forth by our Supreme Court. In the two leading cases, *Morelock v. Millers Mutual Insurance*, 49 Ill.2d 234 (1971), and *Putnam v. New Amsterdam Casualty Co.*, *supra*, the Court held that "other insurance" provisions do not frustrate the legislative purpose of the statute requiring protection against uninsured motorists (Ill. Rev. Stat. 1969, ch. 73, sec. 755a(1)); that such clauses are valid; that when "other insurance" clauses of different policies are in conflict, they should be reconciled and whenever possible, effect the intention of the parties.

The Court expressed disapproval of the concept of "stacking" policies (aggregating benefits from more than one policy) when it said:

> "* * * If * * * [stacking] were mandated as a matter of public policy, motorists would be in the unusual position of preferring that any injuries sustained be at the hands of uninsured motorists rather than motorists who comply with the Financial Responsibility Law * * *" *Putnam v. New Amsterdam Casualty Co., supra*, 86.

Although in *Morelock* the same company had issued both policies, the court gave effect to the clause.[1] In view of these pronouncements, the trial judge, in the case at bar, correctly interpreted the "other insurance" provision under Part IV and gave the policy the effect which its language clearly commands. This conclusion follows the reasoning of the dissent in *Dokter, supra,* and is in accord, we feel, with the rationale of our Supreme Court. See also, *Keeble v. Allstate Insurance Co.,* 342 F. Supp. 963 (E.D. Tenn. 1971).

■■ Under Part II, the "other insurance" provision reads:

> "If there is other automobile medical payments insurance against a loss covered by Part II of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."

This paragraph is substantially different from the second paragraph of the quoted provision of Part IV. The Part IV paragraph first restricts the amount recoverable to the higher of the limits of liability and then provides for pro-rating. The Part II clause, however, has no limiting language; it provides only for pro-rating. The trial judge erred, therefore, in finding that plaintiff can recover a maximum of $2000 under Part II; we find he may recover up to an aggregate maximum of $6000.

■■ The policies' limits of liability appear under Part IV:

> "(d) The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile

---

[1] We are aware that we here interpret the second paragraph of the "other insurance" clause, while in *Morelock* the Court interpreted the first paragraph. However, that decision clearly indicates that the Court does not sanction "stacking" even when the multiple policies are issued by the same carrier.

which represents expenses for medical services paid or payable under Part II."

We have interpreted this provision in *Melson v. Ill. National Insurance Co.*, 1 Ill.App.3d 1025 (1971), and, in view of that rationale, we find that the trial judge here erred in ordering the award under Part II to be credited against any recovery under Part IV.

■■ Plaintiff next argues that subrogation should not be allowed against any possible recovery under the pending dram shop suit. The trial judge found defendant to be entitled to:

"\* \* \* subrogate for any monies recovered by the plaintiffs by settlement or judgment obtained against any person or organization legally responsible for bodily injuries to the extent of payment made by the insurer under the Uninsured Motorist provision of the policies, including recovery in lawsuit #G24436 pending in the Circuit Court \* \* \*."

The case of *Remsen v. Midway Liquors, Inc.*, 30 Ill.App.2d 132 (1961), is dispositive of this issue. There the court held that a "Trust Agreement," identical to the one contained herein, provided subrogation to the rights of an insured against the dram shop that caused the loss. Plaintiff attempts to distinguish *Remsen* because, in that case, the insurance company had already made payment to the insured, while here the defendant seeks to have plaintiff's interest in a dram shop action assigned before establishment of the right to or extent of any recovery under the policies. It is claimed that the court's action in this respect is against public policy.

The trial judge's finding, and the Trust Agreement by its terms, clearly state that subrogation is allowed only to the extent of payment made by the insurer to the insured. The court's order was an anticipatory determination whereby, if it develops that defendant pays the plaintiff under Part IV of the policy, the right to subrogate, up to the amount paid, will vest in the defendant. This is all the court concluded by its order. The determination at this time has forestalled the possibility of multiple suits on the issue. Such procedure cannot be said to be against public policy.

■■ Finally, plaintiff argues that he is entitled to attorney's fees due to defendant's refusal to arbitrate the issues of liability and damages prior to questions of coverage and subrogation being settled. Under the arbitration provision contained in plaintiff's policies, only the issues of liability of the other motorist and the amount of damages resulting from the accident are subject to arbitration. (*Flood v. Country Mutual Insurance Co.*, 41 Ill.2d 91 (1968); *Farmers Insurance Group v. Harris*, 4 Ill. App.3d 372, 375 (1972).) Issues relating to coverage under the policy

and issues unrelated to liability and to damages are for the court's determination. Issues here litigated were not arbitrable and defendant's refusal to arbitrate does not allow plaintiff to recover court costs and attorney's fees.

We affirm that portion of the judgment which, (1) limits plaintiff to a maximum recovery of $10,000 under Part IV coverage, (2) allows defendant subrogation under Part IV, and (3) denies plaintiff costs and fees.

We reverse that portion of the judgment which limits the plaintiff to a maximum of $2000 under Part II coverage and hold that an aggregate maximum of $6000 is available. We also reverse the finding that the recovery under Part IV will automatically be credited with those funds paid out under Part II and direct attention to the *Melson* decision for guidance.

Affirmed in part, reversed in part, and remanded.

ABRAHAMSON, J., concurs.

Mr. JUSTICE SEIDENFELD dissenting in part:

I respectfully dissent from that portion of the majority opinion holding that the "other insurance" clause is unambiguous in this situation, and is applicable to limit defendant's uninsured motorist liability to $10,000. The majority relies on two Supreme Court cases (*Morelock v. Millers Mutual Insurance* (1971), 49 Ill.2d 234; *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill.2d 71) which express disapproval with the concept of stacking policies. However, neither dealt with a fact situation similar to that before us. In *Morelock*, the plaintiff sought recovery under her own policy and under that of her father, whose car she was driving at the time of the accident. While both policies were issued by the same company, they were not issued to the same person, and presumably the different insureds paid the premiums on their respective policies. The father's policy was held to be "other insurance". In *Putnam*, the plaintiffs sought recovery under their own policy and the policy of a friend, in whose car they were riding when the accident took place. Again, the friend's policy was held "other insurance". The court disapproved of stacking policies because this would place motorists in the unusual position of preferring that any injuries sustained be at the hands of uninsured motorists rather than motorists who comply with the Financial Responsibility Law. However, the court agreed with the plaintiff that the Illinois uninsured motorist statute (Ill. Rev. Stat. 1969, ch. 73, par. 755a) does not prevent motorists from obtaining, or companies from issuing, uninsured motorist protection in excess of the minimum statu-

tory requirements. See also *Deterding v. State Farm Farm Mut. Auto. Insurance Co.* (1966), 78 Ill.App.2d 29.

In the case before us, not only are all three of the policies issued by a single company, but they are issued to a single insured, who has paid the company three premiums for this coverage. The insurance company does not deny that the accident is covered by the uninsured motorist provisions of all three policies, and that it accepted separate premiums to provide this coverage under each policy. In such case, it is not the stacking of policies which puts plaintiff in a better position than if the accident had been caused by an insured motorist. Rather, the increased coverage is caused by plaintiff's payment of multiple premiums, and the defendant's election to issue multiple policies providing similar items of coverage. See *Woolston v. State Farm Mutual Insurance Co.* (W. D. Ark. 1969), 306 F.Supp. 738; *Sturdy v. Allied Mutual Insurance Co.* (Kan. 1969), 457 P.2d 34, 42.

I would further conclude that the term "other insurance" is ambiguous in this situation. It has been stated that there is no purpose in proration unless the "other insurance" was written by another company, since such clauses are designed to preclude payment of a disproportionate amount of a loss shared with another company. *United Services Automobile Association v. Dokter* (Nev. 1970), 478 P.2d 583, 584. See also *Deterding v. State Farm Mut. Auto. Insurance Co.* (1966), 78 Ill.App.2d 29, 36.

In *Morelock*, "other insurance" was held to include a policy written by the same company but to different insureds. To extend this interpretation of the policy language to permit the insurer to issue separate policies to the same insured and to pro-rate the loss among these policies, seems an unfair, and unwarranted result. The insured would not reasonably anticipate that his own policies would be regarded as "other insurance". When the fact that the same company issued the policies is coupled with the fact that the policies are issued to the same insured, who has paid the separate premiums, an ambiguity arises which should be resolved in favor of the insured.