CHARLES CAPPS, CHARLES CAPPS AS ADMINISTRATOR OF THE ESTATE OF EULA CAPPS, HEIDI CAPPS, b/n/f CHARLES CAPPS, AND CHARLES CAPPS AS ADMINISTRATOR OF THE ESTATE OF JOHN CAPPS *v.* RICHARD M. KLEBS, TRINITY UNIVERSAL INSURANCE CO.

[No. 3-976A214. Filed November 9, 1978. Rehearing denied January 2, 1979. Transfer denied April 26, 1979.]

294

*Saul I. Ruman*, of Hammond, for appellants.

*James E. Schreiner, Thomas J. Kane, Travis, Tinkham & Schreiner*, of Hammond, for appellee.

GARRARD, P.J. — On May 5, 1972, an automobile driven by Eula Capps and occupied by her children, John, Heidi and Douglas Capps, was struck by Richard Klebs, an intoxicated and uninsured motorist. Eula and John were killed. Heidi and Douglas sustained permanent injuries. Charles

Capps, as administrator of the deceased Capps' estates and as next friend of the minor Capps, brought an action against the uninsured motorist Richard Klebs and against Fred and Mildred Stewart d/b/a House of Stewart and Brass Rail Lounge (hereinafter Stewarts), the operators of a tavern at which Richard Klebs had become intoxicated. Prior to trial, settlement was negotiated between the Capps and the Stewarts pursuant to which the Capps received $60,000. A trial was held as to the remaining defendant, Klebs, and judgment was entered against him in the amount of $695,000. No portion of this judgment has been recovered by Capps, nor does it appear to be recoverable. At the time of the accident, the Capps family was insured by Trinity Universal Insurance Company (hereinafter Trinity). This insurance coverage included protection against an uninsured motorist up to $30,000. Since Klebs was an uninsured motorist, Trinity had paid the Capps family $30,000. Trinity intervened in the action claiming a right of subrogation in the amount of $30,000 against the $60,000 settlement received by the Capps from the Stewarts. The trial court held that Trinity was entitled to recover the $30,000 under its right of subrogation.

The sole issue presented to this court is whether the uninsured motorist's carrier has a right to subrogate, pursuant to the terms of its policy and under IC 27-7-5-1, to the proceeds of a settlement its policyholders make with a tortfeasor before the policyholders have been fully compensated for their injuries. The issue is one of first impression.[1]

---

1. *Leist v. Auto Owners Ins. Co.* (1974), 160 Ind. App. 322, 311 N.E.2d 828 is cited by the appellants as deciding the issue. Unfortunately, it does not. At the time of the injury to Leist; Auto Owners Insurance Co. had issued two policies covering Leist; a workman's compensation policy and a fleet policy containing uninsured motorist coverage. Leist had obtained payment from Auto Owners under the workman's compensation policy and had then sought arbitration to determine his personal injuries pursuant to the uninsured motorist provision. Auto Owners obtained an injunction preventing Leist from pursuing arbitration. The trial court held that Auto Owners was entitled to deduct the monies paid under the workman's compensation policy from the proceeds due Leist under the uninsured motorist coverage. This court held that the uninsured motorist statute allows no right of subrogation until there is a judgment, settlement or refusal of the insured to assert his right of recovery. The holding was limited to the illegality of the set-off clause and the prematurity of any right of subrogation by Auto Owners to the uninsured motorist coverage proceeds until such time as the liability, if any, of the third party tortfeasor is established by judgment, settlement or arbitration and Leist's total damages determined.

Appellants contend that IC 27-7-5-1, the uninsured motorist statute, is ambiguous since it can be interpreted in two ways:

1.   The insurer is entitled to subrogate to the proceeds of any settlement only if the injured party has been fully compensated for his adjudged losses, or

2.   The insurer may subrogate to the proceeds whether or not the injured party has been fully compensated for his adjudged losses.

Appellee contends that the second interpretation suggested by the appellants is the sole interpretation that can be gleaned from the statute since the language is clear and precise and imposes no conditions on the right of the insurance company to subrogate to the proceeds of *any* settlement or judgment from any person legally responsible up to the amount actually paid to the insured.

IC 27-7-5-1 provides in part:

"The policy or indorsement affording the coverage specified in this act may further provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death because of which such payment is made, and *the insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result* from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death for which payment is made by the insurer. Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made, as in their interest may appear, by proper action in any court of competent jurisdiction." (emphasis supplied)

Part of the problem in these opposing interpretations revolves around the meaning of the word "subrogation," which is not defined by the statute. Subrogation is "a legal fiction through which a person, who not as a volunteer or in his own wrong, and in absence of outstanding and superior equities, pays the debts of another, is substituted to all rights and remedies of the other." Black's Law Dictionary (4th Ed.). The general rule applicable to actions based on the

ground of subrogation is that the right does not exist unless the whole debt has been paid. *Maryland Casualty Company of Baltimore v. Cleveland, Cincinnati, Chicago and St. Louis Railroad Company* (1919), 74 Ind. App. 272, 124 N.E. 774; *Opp v. Ward, et al.* (1890), 125 Ind. 241, 24 N.E. 974. Even if a surety is liable for only part of the debt and pays that part for which he is liable, he cannot be subrogated until the whole demand or debt is satisfied. The rule applies to contractual as well as equitable subrogation, unless the contract by which such right is created provides otherwise. Where the claim to *pro tanto* subrogation (subrogation before the debt is satisfied) is based in contract, the contract must be clear, unequivocal and so certain as to admit no doubt on the question. *Maryland Casualty Company of Baltimore v. Cleveland, Cincinnati, Chicago and St. Louis Railroad Company, supra; Washington Township Board of Finance v. American Surety Company of New York, et al.* (1932), 97 Ind. App. 45, 183 N.E. 492; *Morrow, et al. v. U.S. Mortgage Company* (1884), 96 Ind. 21; *Knaffl v. Knoxville Banking & Trust Company* (1915), 133 Tenn. 655, 182 S.W. 232; Sheldon on Subrogation (2d Ed. § 127); Ruling Case Law, Vol. 25, § 6.

Thus, there is substantial authority in Indiana that Trinity is not entitled to the proceeds of the Stewart settlement until the Capps recover the $695,000 judgment against Klebs, *unless* the insurance policy and, more importantly, the uninsured motorist statute clearly and unequivocally provide for *pro tanto* subrogation.[2]

In *White v. Nationwide Mutual Ins. Co.* (4th Cir. 1966), 361 F.2d 785, the court construed the language of a subrogation statute similar to Indiana's to allow recovery of monies paid to the insured only after the insured was fully compensated.

---

2. The trust agreement of Capps' insurance policy provides:

"In the event of payment to any person under this part [the uninsured motorist coverage] the company [Trinity] shall be entitled, to the extent of such payment, to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made."

Trinity interprets this agreement as giving it subrogation rights as allowed under the uninsured motorist statute although the statutory word "subrogated" is replaced by the term "entitled to" in the policy. We agree with this interpretation.

' "The right of subrogation cannot be enforced until the whole debt is paid, and until the creditor be wholly satisfied, there ought to be and can be no interference with his rights or securities which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim. . . .' Thus no paramount right of subrogation arises until the insured has received full satisfaction of his judgment against the uninsured driver." 361 F.2d at 787.

Indiana had the opportunity to examine this language, "shall be subrogated, to the extent of payment, to the proceeds . . . ." in a different context in the case of *Maryland Casualty Co. of Baltimore v. Cleveland, Cinn., and Chi. and St. Louis R.R. Co.* (1919), 74 Ind. App. 272, 124 N.E. 774. The language was contained in a workman's compensation insurance policy. The insurance company was seeking to recover monies paid to the employee of the insured. However, the insured was denied the right of subrogation since the employee had not been fully compensated.

"This [subrogation] provision must be considered in connection with the other portions of said policy, and when this is done, it is apparent that it should be construed as an attempt to confer the right of subrogation on appellant, only in the event it has paid the whole liability due in any given case, and not an attempt to provide for subrogation *pro tanto*." 74 Ind.App. at 276, 277.

Obviously, the court did not feel the policy language provided clearly and unequivocally for *pro tanto* subrogation. Since the uninsured motorist statute and the policy in question here use the same language without any other expression of intent, *Maryland Casualty Co.* is authority for construing the language as intending to confer the right of subrogation only in the event the insured has been fully compensated for his adjudged losses.

Furthermore, Indiana follows the majority view that the uninsured motorist statute is remedial in nature and should be liberally construed in favor of the insured. *Patton v. Safeco Insurance Company* (1971), 148 Ind.App. 548, 267 N.E.2d 859; *Cannon v. American Underwriters* (1971), 150 Ind.App. 21, 275 N.E.2d 567; *Indiana Insurance Company v. Noble* (1970), 148 Ind. App. 297, 265 N.E.2d 419; *Security National Insurance Co. v. Hand* (1973), 31 Cal. App. 3d 227, 107

Cal. Rptr. 439; 3 Sutherland, *Statutory Construction* (Horack, 3d Ed.) § 7105 at 393-4. Construing the statute to allow subrogation only after the insured has been made whole is consistent with the common law subrogation doctrine and is consistent with the policy considerations and legislative intent and purposes surrounding the uninsured motorist coverage statute.

The legislature mandated that every automobile insurance policy issued in Indiana include at least $15,000/$30,000 uninsured motorist coverage. It was intended that all persons be insured against the risk of uncompensated losses caused by uninsured motorists at amounts not less than the limits provided for in IC 9-2-1-15. *Leist v. Auto Owners Insurance Co.* (1974), 160 Ind. App. 322, 311 N.E.2d 828; *Simpson v. State Farm Mutual Automobile Ins. Co.* (S.D. Ind. 1970), 318 F. Supp. 1152. IC 9-2-1-15 sets a minimum amount which the insured must recover and not a maximum amount beyond which he may not recover. *Leist, supra; Patton v. Safeco Ins., supra.* Trinity, in support of its position, cites *Glidden v. Farmers Automobile Insurance Association* (1973), 11 Ill. App. 3d 81, 296 N.E.2d 84 which interpreted the Illinois uninsured motorist statute as providing for *pro tanto* subrogation. Contrary to Indiana's position, Illinois has held that their statute sets the maximum amount of recovery. Hence the *Glidden* case is not persuasive for Indiana's interpretation of the subrogation provision. *See Ullman v. Wolverine Ins. Co.* (1969), 105 Ill. App. 2d 408, 244 N.E.2d 827, *affd.* 48 Ill. 2d 1, 269 N.E.2d 295.

The purpose of the uninsured motorist statute is to require that a minimum amount of insurance be available to an injured insured which would place him in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the financial responsibility act. *Bocek v. Inter-Insurance Exchange of Chicago Motor Club* (1977), 175 Ind.App. 69, 369 N.E.2d 1093; *Ullman v. Wolverine Ins. Co., supra; Peterson v. State Farm Mutual Automobile Ins. Co.* (1964), 238 Or. 106, 393 P.2d 651; *Chandler v. Government Employees Ins. Co.* (5th Cir. 1965), 342 F.2d 420. If Trinity's interpretation of the subrogation provision were adopted in this case, Trinity would, in effect, be allowed to avoid its statutory obligation to provide a minimum of $30,000 to compensate its insured

for losses caused by the uninsured motorist, although the policyholder remains uncompensated for such losses. The statute was designed to diminish this type of uncompensated loss up to the limits of the required policy provision. *Pro tanto* subrogation would effectively nullify the coverage ostensibly provided by the policy. The Capps would be in a worse position than they would have been in had Klebs been insured. If Klebs had complied with the financial responsibility act (IC 9-2-1-15), the Capps would have been compensated at least $30,000 from Klebs' insured and $60,000 from the Stewart settlement. To allow subrogation when the Capps have not been fully compensated places them in the same position as if Klebs was uninsured and there was no uninsured motorist statute in effect. Under such circumstances there would be no advantage to paying premiums for uninsured motorist protection in such joint tortfeasor situations. We cannot ascribe such an intent to the legislature. The only purpose of the subrogation provision that is consistent with the statutory framework of minimum coverages required by law is to prevent double recovery. The Capps are entitled to be compensated for their injuries but only to the extent of the actual loss. The absolute limit of recovery in all cases is the amount of damages sustained for personal injuries. *Patton v. Safeco, supra.*

Finally, we note that other jurisdictions have considered this issue and reached the same conclusion.[3] In *Raitt v. National Grange Mutual Insurance Co.* (1971), 111 N.H. 397, 285 A.2d 799, the New Hampshire Supreme Court limited application of the subrogation provisions of the uninsured motorist statute and the policy to cases where the coverage would otherwise result in overlapping recovery. The court reasoned that to hold otherwise would result in nullification of the established legislative purpose to provide a minimum of uninsured motorist coverage. *Milbank Mutual Insurance Co. v. Kluver* (1974), 302 Minn. 310, 225 N.W.2d 230 reached the conclusion that *pro tanto* subrogation would

3. Trinity refers us to several decisions in other jurisdictions which allegedly reach the opposite conclusion. The majority of these cases do not deal with statutes similar to Indiana's, or are concerned with other facets of the uninsured motorist statute or involve situations when the insured had been fully compensated for his loss. However, *Traders General Insurance Co. v. Reynolds* (Tex. App. 1972), 477 S.W.2d 937 is on point and squarely holds contrary to the decision reached by this court. We do not find its reasoning persuasive.

nullify the insuring provision of the statute by allowing the insurance company to avoid its statutory obligation to provide coverage and by depriving the insured of benefits for which a premium had been paid, placing the insured in a worse position than if the uninsured motorist had been insured. *See also White v. Nationwide Mutual Insurance Co.* (4th Cir. 1966), 361 F.2d 785; *Security National Insurance Co. v. Hand* (1973), 31 Cal. App. 3d 227, 107 Cal. Rptr. 439; *United Services Automobile Association v. Cotter* (Fla. App. 1970), 241 So. 2d 733.

It is our opinion that appellants' contention that the uninsured motorist statute is ambiguous is correct in light of Indiana's interpretation of subrogation. A review of the legislative purposes and policies of the statute compels a finding that the legislature intended that subrogation was to be allowed only after the policyholder is fully compensated for his adjudged losses. Therefore, we hold that Trinity is not entitled to be subrogated to the extent of the $30,000 payment under the insurance policy until the $695,000 judgment is fully recovered.

Reversed.

Staton and Hoffman, JJ. concur.

NOTE—Reported at 382 N.E.2d 947.