GLORIA W. THATCHER, Adm'r of the Estate of Anne S. Thatcher, Deceased, Plaintiff-Appellee, *v.* GARY L. EICHELBERGER *et al.*, Defendants.—(STATE FARM FIRE AND CASUALTY COMPANY, Intervening Appellant.)

Fourth District   No. 16810

Opinion filed December 10, 1981.—Modified on denial of rehearing January 22, 1982.

Hurshal C. Tummelson and Betsy Pendleton Wong, both of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellant.

George Kaye, Ltd., of Paxton, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Two issues are presented: (1) Whether an insurer can be subrogated to the rights of its insured to the proceeds of a wrongful death action, where the insurer paid a claim to the insured under an uninsured motorist provision of an insurance policy; and (2) whether a settlement agreement between the parties is final prior to its execution. We conclude that the insurer is entitled to subrogation and that the settlement was final.

The decedent, Anne Thatcher, died as a result of injuries she received in a collision which occurred on August 17, 1975, between the motorcycle on which she was a passenger and a truck. The motorcycle was driven by defendant, Gary Eichelberger, and the truck was driven by defendant, Larry Tribbey. Plaintiff, Gloria Thatcher, decedent's mother, was appointed administrator of decedent's estate. Gloria Thatcher subsequently commenced this wrongful death action against defendants, alleging that their negligence caused Anne Thatcher's death. Because defendant Eichelberger was uninsured, prior to filing the wrongful death action, a claim was made to State Farm Fire and Casualty Company (State Farm), intervenor-appellant, under the uninsured motorist provision of the insurance policy previously issued by State Farm to plaintiff. After negotiations, State Farm paid $9,000 to plaintiff as administrator of her daughter's estate. Plaintiff signed a release and trust agreement on February 20, 1976, which provided in part:

"For the consideration aforesaid, and to the extent of any payment made hereunder, the undersigned agrees to hold in trust for the benefit of the Company all rights of recovery which he shall have against any person or organization legally liable for such bodily injuries, and assigns to the Company the proceeds of any settlement with or judgment against such person or organization."

On February 24, 1976, plaintiff obtained an order from probate court authorizing both the insurance settlement, and the assignment to State Farm of rights of recovery against third parties on account of Anne Thatcher's injuries and death to the extent of the amount received from State Farm, including the language:

"[U]pon receiving that sum, the administrator execute and deliver to the company a discharge from liability under the policy with an assignment of rights of recovery against third persons on account of decedent's injuries and death to the extent of the amount paid."

Plaintiff subsequently filed this action for wrongful death, and State Farm filed an application to be made a party, asserting its rights under the trust agreement. The court allowed State Farm's application.

At a pretrial conference on February 7, 1980, a settlement was agreed upon by the parties. The docket entry by the court on that date indicated that counsel for all parties were present, and further stated:

"Parties stipulate that upon payment of $2,500 from defendant Eichelberger and $2,500 from defendant Tribbey (total $5000.00) to plaintiff; State Farm shall be reimbursed $3000.00 whereupon the cause shall be dismissed. Payments are to be made within 14 days. On joint motion of all parties, cause removed from 2/25/80 jury calendar and continued generally pending settlement."

On June 4, 1980, the defendants filed a joint petition, alleging plaintiff had refused to abide by the settlement terms and execute the necessary releases, despite the fact that the consideration for the settlement had been tendered to her. The petition requested that the court order the plaintiff to conclude the settlement agreed upon at the pretrial conference. At the hearing on the petition on September 16, 1980, plaintiff's attorney argued that due to recent case law, State Farm could not recover any part of the wrongful death proceeds. Plaintiff subsequently filed a motion to dismiss State Farm as a party, alleging that the trust agreement that plaintiff signed when she received the payment from State Farm was "void and contrary to public policy" under the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, par. 1 *et seq.*) and should not be enforced. State Farm filed an objection to plaintiff's motion, and the court allowed the motion based upon the precedent of *In re Estate of Schmidt* (1979), 79 Ill. App. 3d 456, 398 N.E.2d 589, and *National Bank v. Podgorski* (1978), 57 Ill. App. 3d 265, 373 N.E.2d 82. The written order dismissing State Farm as a party entered by the court included a finding

under Supreme Court Rule 304 (Ill. Rev. Stat. 1979, ch. 110A, par. 304) that there was no just reason to delay appeal, from which order State Farm has appealed.

■■ The statutory basis for the claim that insurance companies should not be allowed subrogation rights in wrongful death actions is section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, par. 2), which provides:

"Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, *the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin* of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person." (Emphasis added.)

Based upon this provision this court, in *Podgorski*, held that an insurance company was properly denied subrogation in a wrongful death action settlement. The insurance company had made and, in the future, would be required to make, payments to the widow of the decedent pursuant to a survivor's benefit provision of an auto insurance policy it had issued to decedent. The court noted that the insurance company was making payments to the widow to compensate her for loss of support, while recovery under the Wrongful Death Act is for both loss of support and for losses occasioned in addition to support. Further, there was no formula available to the court to determine what portion of the wrongful death award was indemnifying the widow for her loss of support. The court found that the above quoted language from the Wrongful Death Act indicated a public policy to prohibit subrogation rights from attaching to Wrongful Death Act proceeds.

However, with regard to payment under the uninsured motorist provision of an insurance policy, it is noted that section 143a of the Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755a) requires that uninsured motorist provisions be included in every insurance policy, and further states:

"In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily *injury or death* for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 73, par. 755a(3).

In *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, the supreme court permitted subrogation by an insurer who had made payments under its uninsured motorist coverage to the plaintiff, whose wife, while a pedestrian, had been struck and killed by an uninsured motorist. The insurer sought subrogation in the dramshop action filed by plaintiff under section 14 of article VI of the Dramshop Act (Ill. Rev. Stat. 1973, ch. 43, par. 135) which, like the Wrongful Death Act, provides that recovery shall be for the exclusive benefit of the person injured in loss of support. The supreme court concluded that the insurance company was entitled to subrogation to any monies recovered by the plaintiff, to the extent of payments made under the uninsured motorist coverage. The court stated:

> "We believe that the insurer should be subrogated to any monies recovered from the uninsured tortfeasor and under the dramshop action." 57 Ill. 2d 330, 338, 312 N.E.2d 247, 252.

In *Glidden*, the supreme court pointed out that the statute made inclusion of an uninsured motorist clause mandatory. Neither *Schmidt* nor *Podgorski* concern the uninsured motorist provisions, but sought subrogation under the general contract provisions of the policy. Neither opinion had occasion to consider the effect of the subrogation provisions of section 143a of the Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755a) as a statement of legislative policy.

One finds that in 1963 and 1965, section 143a of the Code did not include any provision with regard to subrogation by the insurer. On the contrary, in 1967 and 1969, the subrogation provision was included. It appears that in 1971, section 143a of the Code was repealed effective January 1, 1972, but was thereafter restored, effective October 1973. The supreme court opinion in *Glidden* does not refer specifically to section 143a of the Code, nor does it indicate a relevant date within the time frame of the legislative actions concerning repeal and reinstatement. The opinion of the appellate court (*Glidden v. Farmers Automobile Insurance Association* (1973), 11 Ill. App. 3d 81, 296 N.E.2d 84) only discloses that the injury occurred in August 1970. It appears that for purposes of the *Glidden* opinion there may have been a hiatus in the operation of the provision of the Code.

In the light of the legislative action in making mandatory a requirement of uninsured motorist coverage and the subsequent amendments some four years later to grant a right of subrogation to the insurer, it is reasonable to conclude that the legislature was creating public policy in the matter of subrogation as to payments made by reason of that coverage.

In *Podgorski*, a secondary issue involved the language and effect of the subrogation clause in the particular insurance policy involved. Plain-

tiff here asserts that in this case the insurance policy was not introduced at trial and therefore this court should find that the subrogation clause is unenforceable. The insurance policy was not proffered by State Farm at trial because no challenge was made by plaintiff at trial to State Farm's right to subrogation pursuant to policy terms, but the challenge was solely based on the public policy involved in allowing subrogation in this type of case. Further, by signing of the trust agreement, plaintiff acknowledged State Farm's right to subrogation under the terms of the insurance policy.

The second issue raised in this appeal is whether the settlement agreed to by the parties at the pretrial conference was final and binding upon the parties in the absence of a showing of fraud or mistake. State Farm asserts that at the February 1980 pretrial conference the parties agreed upon a settlement which included the insurance company, as memorialized by the docket entry on that date, and that that agreement settled any dispute as to whether State Farm would have been entitled to subrogation had the claim been litigated. The plaintiff asserts that the settlement agreement was tentative only as it was subject to approval by the probate court, and also subject to the signing of written releases.

We have noted the language of the order of the probate court placed in the record and that such order bears a stamp suggesting drafting by plaintiff's attorney, and conclude that, upon its face, that order requires no further action in the probate court relating to the assignment of rights for purposes of subrogation.

Plaintiff primarily relies on *Vece v. De Biase* (1964), 46 Ill. App. 2d 248, 197 N.E.2d 79, to support her position. In *Vece*, an attorney for the executor of the estate informed the court, in a will contest proceeding, that a settlement had been reached and the case was then continued for settlement. At the next court appearance the estate's attorney told the court that the Internal Revenue Service was about to file a large claim against the estate, and that therefore the offer to settle was withdrawn. Plaintiff requested, and the court entered, judgment on the settlement which the appellate court subsequently reversed, finding that the settlement agreement had not been finalized. However, the appellate court decision was based largely upon the fact that the Internal Revenue Service claim constituted a material mistake of fact. Even final settlements can be set aside upon a showing of fraud or mistake. *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.

*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837, presents a situation similar to that in the case at bar. In *Sheffield Poly-Glaz, Inc.*, all of the attorneys for the parties to the litigation reported to the court that a particular settlement was acceptable to all of the parties. The trial court ordered the parties to draw up an order to dispose of the litigation, but prior to the entry of the order, counsel for

the appellant learned from the appellant that he had not understood the terms of the settlement agreement. The attorney then returned to court and told the court that his client found the settlement unacceptable. The trial court ordered performance of the settlement agreement, and the appellate court affirmed, stating:

> "Settlements are to be encouraged and given full force and effect. They should not be set aside absent a showing of fraud or mistake. (*Zamouski v. Gerrard* (2nd Dist. 1971), 1 Ill. App. 3d 890, 895, 275 N.E.2d 429.) Such agreements are recognized by the courts where they are based on sufficient consideration and the parties have met on equal terms. (11 Ill. L. & Pr. *Compromise & Settlement* §2 (1955).) A settlement based on an oral agreement may be enforced. (*Zamouski*, at 895; *Theatre Time*, at 174.) These agreements are binding so long as there is clearly an offer and acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement. 11 Ill. L. & Pr. *Compromise & Settlement* §3 (1955); 15 Am. Jur. 2d *Compromise & Settlement* §6 (1964)." (42 Ill. App. 3d 865, 868-69, 356 N.E.2d 837, 840.)

That court also noted that the written order which was to be entered by the parties did not formalize the agreement, but merely disposed of the litigation.

■■ In the case at bar, the parties agreed upon a settlement, and approval of the probate court had been obtained. The settlement was final, and the parties were bound by the agreement they had made.

■■ While settlement agreements can be set aside because of mistake, the "mistake" which occurred in this case cannot serve as a basis for setting aside the agreement. Subsequent to entry into the settlement agreement, the attorney for plaintiff adopted a conclusion that case law provided no subrogation right on the part of State Farm. The discovery of a new legal theory by an attorney, to advance his client's case, does not constitute a mistake on which basis a settlement agreement can be set aside. (*Holbrook v. Tomlinson* (1922), 304 Ill. 579, 136 N.E. 745.) Therefore, we hold that the settlement agreement between the parties was final and binding upon the parties.

Upon denial of appellant's petition for rehearing we modify the opinion to state that State Farm is entitled to $3000 from the proceeds of settlement as agreed between the parties.

For such reasons, the order of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed.

Reversed and remanded with directions.

MILLS and LONDRIGAN, JJ., concur.